GRAHAM v KOCHVILLE TOWNSHIP

Docket No. 198979. Submitted January 20, 19999, at Lansing. Decided
June 11, 1999, at 9:00 A.M.

Thomas A. and Pamela R. Graham brought an action in the Saginaw
Circuit Court against Kochville Township, seeking a declaration
that a township ordinance that imposes a fee on landowners for
hooking up to the township's extended water supply system is inva-
lid because the township ordinance act, MCL 41.181; MSA 5.45(1),
does not provide authority for adoption of such an ordinance and
because the fee is a disguised form of a special assessment that
previously was invalidated by the Tax Tribunal. The court, Robert
L. Kaczmarek, J., entered the requested declaratory judgment. The
township appealed.

The Court of Appeals *held*:

1. The township ordinance act provides that a township may
adopt ordinances regulating the public health, safety, and general
welfare of persons and property, including but not limited to the
examples listed by the act. The ordinance at issue is within the
range of the township's discretionary powers under the act and is
reasonable in light of a rational relationship between the ordinance
and public health, safety, and welfare. Additional authority is pro-
vided by MCL 123.742; MSA 5.570(12), which allows a county and a
township to enter into a contract for the extension of a water sup-
ply system and allows a township to finance the extension through
a special assessment or a connection fee.

2. The fee imposed by the ordinance at issue is not the invali-
dated special assessment in disguise. The fee meets criteria charac-
teristic of fees: it serves a regulatory purpose, is proportionate to
the necessary costs of the service, and is voluntary.

Reversed.

1. ORDINANCES — TOWNSHIP ORDINANCE ACT — COURT OF APPEALS.

Review by the Court of Appeals of a township ordinance is limited to
determining whether the ordinance is within the range of discre-
tionary powers conferred on townships by the township ordinance
act and determining whether the ordinance is reasonable; an ordi-
nance is reasonable if there is a rational relationship between the

exercise of police power and the public health, safety, or general welfare (MCL 41.181; MSA 5.45[1]).

2. WORDS AND PHRASES — SPECIAL ASSESSMENTS.
    A special assessment is a specific levy designed to recover the costs of improvements that confer local and peculiar benefits on property within a defined area.

3. WORDS AND PHRASES — MUNICIPAL FEES.
    A fee must serve a regulatory purpose, must be proportionate to the necessary costs of the service, and must be voluntary.

UAW-GM Legal Services Plan (by *Kathie A. Athey*), for the plaintiff.

*Maturen, Mahlberg, Leak & Brandt* (by *Mark T. Mahlberg*), for the defendant.

Before: MACKENZIE, P.J., and BANDSTRA and MARKMAN, JJ.

MARKMAN, J. Defendant Kochville Township appeals as of right a declaratory judgment issued in favor of plaintiffs on October 3, 1996. The dispute arose when defendant enacted Ordinance 93-7-W to enable it to collect connection fees for hooking up users to the newly extended water supply system being constructed in the township. This ordinance was enacted after plaintiffs had successfully appealed to the Michigan Tax Tribunal the amount of special assessments imposed by defendant. Plaintiffs alleged that Ordinance 93-7-W was a subterfuge that circumvented the Tax Tribunal's decision and that it was otherwise unconstitutional. Defendant argued that it possessed the statutory authority to build a water supply system and to collect money from affected township citizens in order to help defray the costs involved with such a system. The trial court ruled in favor of plaintiffs on the basis of its determination that the township did

not have the authority to pass such an ordinance, and that the connection fee was, in fact, a special assessment in the exact same amount already held invalid with regard to plaintiffs by the Tax Tribunal. We reverse.

Plaintiffs own a parcel of land in Kochville Township, Saginaw County. On November 12, 1992, defendant created a special assessment district, Water District No. 3, in which defendant was going to install a new water supply system at a cost of $430,000. Plaintiffs were a part of Water District No. 3. Each parcel in Water District No. 3 was assessed a "frontage assessment charge" of $6,937.50, an additional assessment, labeled a unit charge, calculated at $1,000 a parcel, and later a supplemental special assessment of $1,250.

Plaintiffs and the owners of three other assessable parcels appealed the special assessment charges to the Tax Tribunal. On October 28, 1993, the Tax Tribunal held the assessment of $9,187.50 to be invalid with respect to plaintiffs and the other appealing landowners because the assessments would not increase the value of the landowners' properties by the total amount of the assessments. The Tax Tribunal further held that defendant was limited to a special assessment of no more than $2,000 on plaintiffs' lands on the basis of its determination that this was the maximum amount by which the value of the lands would increase as a result of the new water supply system.

On December 20, 1993, two months after the Tax Tribunal's ruling, defendant enacted Ordinance 93-7-W, which established a connection or "tap-in" fee to be levied against any parcel owner who had not paid

the special assessment at issue before the Tax Tribunal.[1] The ordinance applied only to the affected property owners who had appealed the amount of the special assessment and to possible future owners of property not yet developed in the district. The fee

---

[1] Ordinance 93-7-W provides, in pertinent part:

The following cost connection charges or tap-in fees shall be made for a water service connection to the Township water supply system known and referred to as Water Supply District No. 3, and any subdivisions thereof.

*    *    *

B. The charges to be computed under the terms of said Ordinance shall apply to all parcels of land split from a previously assessed parcel, or to a parcel that was not previously assessed, or to any parcel that was in Act 116 of PA of 1974, as amended, that was not fully and completely assessed, for a water line connection in the assessment roll or rolls of said water district confirmed on November 12, 1992 and June 23, 1993. Any parcel of property in the Water Supply District No. 3 that has not paid, or been assessed the minimum sum of $9,187.50, or the owner of which parcel has not agreed to have that minimum sum spread over a period of years, to be paid in future installments, shall pay such additional sum, or be subject to a contract or agreement to pay the total sum of $9,187.50, plus interest, before connection can or shall be made to the water supply system. It has been determined that the minimum sum of $9,187.50 shall be paid, or an agreement to pay that minimum sum shall be made before a tap in to the water supply system is made, so as to pay for the water supply facilities constructed to service the area commonly known as Water Supply District No. 3. The Township of Kochville has determined that the minimum basic connection or tap-in fee shall be $9,187.50, plus interest, for the privilege of tapping in, or connecting to the water supply system, subject to the equivalency charges as set forth in said Ordinance, or any amendment thereto. In addition to the foregoing enumeration of costs, and charges for the tap-in privilege to the water supply system, interest shall be charged on any unpaid part or portion of such tap-in fee at the rate of six percent (6%) per annum. In addition thereto an inflation factor of five (5%) per year shall be added to the minimum tap-in fee of $9,187.50, computed from November 1, 1992, to the date of payment of the minimum tap-in fee, or until a contract is executed between the property owner and the Township, agreeing to pay such minimum tap-in fee.

was in the amount of $9,187.50, less any part of the $9,187.50 previously paid pursuant to the special assessment. Apparently, this fee would cover the cost of construction, engineering, testing, and administration costs of the system over twenty years, which is the "useful life of the watermain." The fees are assessed according to the individual measurements of each parcel of land with access to the watermain and the use of the land.

In response to the ordinance, plaintiffs filed a complaint against defendant. On October 3, 1996, the trial court issued a declaratory judgment in favor of plaintiffs after it determined that Ordinance 93-7-W was in violation of MCL 41.181; MSA 5.45(1), which confers police power on townships to regulate the public health, safety, or general welfare of the community. The court concluded that the purpose of the ordinance was to regulate water connection fees and that this did not fall within the scope of the police power conferred on the township. The trial court also determined that the ordinance effectively imposed a special assessment because, although the money sought was to be applied to the water usage service, it was also to be used to fund the construction of the system. Defendant appeals from the court's declaratory judgment.

Defendant first argues that the trial court erred in finding that defendant had no statutory authority under the township ordinance act, MCL 41.181; MSA 5.45(1), to enact Ordinance 93-7-W and that it was therefore invalid. This Court's review of township regulations enacted under the township ordinance act is limited to determining "whether a township ordinance is within the range of conferred discretionary powers

and then determin[ing] if it is reasonable." *Natural Aggregates Corp v Brighton Twp*, 213 Mich App 287, 294; 539 NW2d 761 (1995) (citation omitted). An ordinance is reasonable if there is a "rational relationship between the exercise of police power and the public health, safety, morals, or general welfare in a particular manner in a given case." *Id.* Townships have no inherent powers, but have only those limited powers conferred on them by the Legislature or by the state constitution. *Hanselman v Wayne Co Concealed Weapon Licensing Bd*, 419 Mich 168, 187; 351 NW2d 544 (1984). The township ordinance act, MCL 41.181; MSA 5.45(1), is the basic enabling act granting townships the power to enact ordinances regulating the public health, safety, and general welfare. The statute provides, in pertinent part:

> The township board of a township may, at a regular or special meeting by a majority of the members elect of the township board, *adopt ordinances regulating the public health, safety, and general welfare of persons and property, including, but not limited to* fire protection, licensing or use of bicycles, traffic and parking of vehicles, sidewalk maintenance and repairs, the licensing of business establishments, the licensing and regulating of public amusements, and the regulation or prohibition of public nudity and provide penalties for the violation of the ordinances. [MCL 41.181(1); MSA 5.45(1)(1) (emphasis added).]

Under the township ordinance act, "ordinances regulating a broad range of activities" have been upheld. *Natural Aggregates, supra* at 296, quoting *Square Lake Hills Condominium Ass'n v Bloomfield Twp*, 437 Mich 310, 322, n 18; 471 NW2d 321 (1991) (RILEY, J., joined by BRICKLEY and GRIFFIN, JJ.). Indeed, the statute itself lists examples of activities covered by

the act ranging from fire protection to bicycle licensing. MCL 41.181(1); MSA 5.45(1)(1). However, there is no explicit reference to water supply systems in the statute.

In the instant case, the trial court stated that, although the purpose of Ordinance 93-7-W, "to establish minimum and uniform costs and charges for the privilege of hooking up, or tapping into the Kochville Township Water Supply System, and to promote the public health, safety, morals, and general welfare and safety of the public, and the protection of the water supply system of the Township," appeared to fall within the general scope of the township ordinance act, "the legislative grant of police power under [the township ordinance act] is limited to those kinds of things which are enumerated in the statute." The court concluded that, since regulating water connection fees and indeed even provisions regarding water supply systems in general, were not sufficiently similar to the activities explicitly enumerated in the statute, a township could not enact an ordinance to regulate water supply systems and, therefore, defendant's ordinance was invalid. Although we respect the court's effort to ensure that a governmental unit's activity is, in fact, authorized by law, we disagree with its decision in this case. The plain language of the township ordinance act states that townships may "adopt ordinances regulating the public health, safety, and general welfare of persons and property, including, but *not limited to*" the listed examples. MCL 41.181(1); MSA 5.45(1)(1) (emphasis added). This broad, general language is highlighted by Const 1963, art 7, § 34, which provides that provisions concerning townships "shall be liberally construed in their favor.

Powers granted to counties and townships by . . . law shall include those fairly implied and not prohibited by this constitution." Further, Justice RILEY's plurality opinion in *Square Lake, supra,* which this Court explicitly adopted in *Natural Aggregates, supra* at 297, rejected the proposition that the "including, but not limited to" language in the township ordinance act substantially restricted the authority of townships. Instead, Justice RILEY determined:

> When the Legislature added the language to the township ordinance act giving townships the ability to "adopt ordinances regulating the public health, safety and general welfare of persons and property," it provided a statutory mechanism for townships to adopt and enforce regulations, purely local in nature, to enhance the health and safety within its community. [*Square Lake, supra* at 322 (RILEY, J., joined by BRICKLEY and GRIFFIN, JJ.; BOYLE, J., concurring); *Natural Aggregates, supra* at 296.]

Accordingly, we must determine here whether there is a rational relationship between defendant's Ordinance 93-7-W and the public health, safety, or general welfare. See *Natural Aggregates, supra* at 294. In our judgment, it is clear that an ordinance regarding the water supply system of a township, including the fee requirements that will sustain the system, does bear a rational relationship to the public health, safety, and general welfare of the township. The availability of clean water is of paramount importance to the people of the township, affecting their health and safety, as well as the welfare of their property—as evidenced by the $2,000 increase in value to the properties affected by the new water system. Thus, we conclude that the township ordinance act did empower defendant township to enact Ordinance

93-7-W to collect fees to pay for its water supply system.

Moreover, MCL 123.742(1); MSA 5.570(12)(1) provides that a county and a township may enter into "a contract for the acquisition, improvement, enlargement, or extension of a water supply . . . system . . . and for the payment of the cost thereof by the contracting municipalities . . . ." Under such a contract, funds may be raised by the township "[b]y special assessment" or "[b]y the exaction of charges for the connection of properties, directly or indirectly, to the system or for the availability of the system to serve properties . . . ." MCL 123.742(2)(b), (c); MSA 5.570(12)(2)(b), (c). Although the trial court in this case stated that nothing in the record showed that there was a contract between defendant and Saginaw County in this case, plaintiffs stated, during oral argument on appeal, that the existence of a contract between defendant and the county has never been in contention and that plaintiffs, in fact, were in the possession of such a contract. Thus, plaintiffs conceded that MCL 123.742; MSA 5.570(12) provided the authority for the township to finance its water supply system through special assessments or connection fees.[2] Thus, we conclude that defendant had the authority to enact an ordinance regarding the water supply system and its financing, and concomitantly possessed the authority to collect special assessments or connection fees in connection with such a system.

We next turn to defendant's second argument, that the trial court erred in finding that the circumstances

---

[2] See also MCL 123.742(2); MSA 5.570(12)(2): "A municipality may agree to raise *all or any part* of its contract obligation by any of the methods provided in this section which are available." (Emphasis added.)

surrounding the passage of Ordinance 93-7-W show that the "fee" imposed was, in truth, a special assessment, in contravention of the Michigan Tax Tribunal's determination that a special assessment to pay for the water supply system at issue was limited to $2,000. In order to address this argument, we must determine whether the charge imposed by the ordinance was a connection fee or a special assessment. We review this question of law de novo. *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 209; 591 NW2d 52 (1998).

As with the fee/tax distinction addressed by the Supreme Court in *Bolt v Lansing*, 459 Mich 152; 587 NW2d 264 (1998), there is also no bright-line test for distinguishing between a connection/use fee and a special assessment. "Generally, a 'fee' is 'exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit.' " *Id.* at 161 (citation omitted). A special assessment is a "specific levy designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area." *Kadzban v Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993). At first glance, it appears that either of these general definitions could apply to the charges imposed by the ordinance in this case. Thus, we turn to the criteria set out in *Bolt, supra*, for distinguishing a fee. Although we acknowledge that the Supreme Court in *Bolt, supra*, was addressing the fee/tax distinction, rather than the fee/assessment distinction as here, we believe the criteria of a fee are equally applicable to our case. According to *Bolt, supra* at 161-162, the three criteria of a fee are as follows: (1) a fee must

serve a regulatory purpose, (2) a fee must be proportionate to the necessary costs of the service, and (3) a fee is voluntary. We note that the Supreme Court cautioned that these criteria are not to be considered in isolation, but rather in their totality, such that a weakness in one area would not necessarily mandate a finding that the charge at issue is not a fee. *Id.* at 167, n 16.

Accordingly, we address the criteria of a fee, in contrast to those of a tax or a special assessment, in our attempt to determine the true character of the charge at issue here. Because we agree with plaintiffs' statement that the first two criteria are closely related, we analyze these factors together. Thus, we first look to the purpose of the charge in the case at hand and the proportionality of the charge to that purpose. *Id.* at 161-162. While a fee must serve a primary regulatory purpose, it can also raise money as long as it is in support of the underlying regulatory purpose. *Merrelli v St Clair Shores,* 355 Mich 575, 583; 96 NW2d 144 (1959); *Vernor v Secretary of State,* 179 Mich 157, 167; 146 NW 338 (1914). A fee also confers benefits only upon the particular people who pay the fee, not the general public or even a portion of the public who do not pay the fee. *Bolt, supra* at 164-165; *Bray v Dep't of State,* 418 Mich 149, 162; 341 NW2d 92 (1983). Thus, revenue derived from regulation, i.e., a fee, must be proportionate to the cost of the regulation, although we presume that the amount of the fee is reasonable unless the contrary is established. *Vernor, supra* at 167, 168. In contrast, a tax is designed to raise revenue for general public purposes. *Bray, supra* at 162. Similar to a tax, a special assessment is also an exaction to raise revenue, although it

is imposed on particular real property for a local purpose or improvement of direct benefit to that property. *Wikman v Novi*, 413 Mich 617, 633; 322 NW2d 103 (1982); 14 McQuillin, Municipal Corporations (3d ed, 1998), § 38.01, p 12. In *Bolt, supra* at 163-167, the Supreme Court concluded that the charge at issue served a public revenue-raising goal rather than a local regulatory goal, making the charge a tax. The charge served to pay largely for an investment in infrastructure that would benefit the entire city for many years after it was fully paid by the charge, without imposing any regulation.

Although the charge at issue here will also pay for an investment in infrastructure, the extended water line will not benefit the general public. Nor, according to defendant, will it continue to serve the public long after it is paid off by the charge. Instead, the charge will pay for the regulation of a specific part of the community's access to a municipal water supply. Defendant, the township, has extended its water supply to a rural part of the community that formerly was served only by private wells. It seeks to pay, in part, for such extension of its water pipeline by a connection fee that is exacted when residents of this newly served community connect to the municipal water supply. By exacting the fee for connection to the water system, the purpose is clearly to regulate and control the use and distribution of water provided by the municipal system. This ordinance, through its connection charge, will regulate access to a clean, dependable water supply. Although the revenue raised by the charge will pay for the construction of the watermain extension, we find that the purpose of the charge is mainly regulatory—without the exten-

sion of the water line and the connection to such line, the citizens of the community served by the new line would have no access to municipal water.

Further, the construction at issue here benefits only those citizens in the community newly serviced by the water extension who connect to the water line. There is no evidence in the record indicating that the water extension would benefit anyone who does not pay for the privilege of "hooking up" to the extension, nor that anyone who did not benefit would be forced to pay the charge, in contrast to the situation in the *Bolt* case. Instead, this case is more similar to *Contractors & Builders Ass'n v Dunedin*, 329 So 2d 314, 320 (Fla, 1976), in which the Florida Supreme Court held:

> Raising expansion capital by setting connection charges, which do not exceed a *pro rata* share of reasonably anticipated costs of expansion, is permissible where expansion is reasonably required, *if use of the money collected is limited to meeting the costs of expansion.* Users "who benefit especially, not from the maintenance of the system, but by the extension of the system . . . should bear the cost of that extension." [*Id.*, quoting *Hartman v Aurora Sanitary Dist*, 23 Ill 2d 109, 115; 177 NE2d 214 (1961) (emphasis in *Dunedin*).]

As in *Dunedin*, the payment for the expansion of infrastructure here is limited to the specific group of new users who will benefit through the expansion and ability to connect to the municipal water supply. We agree with the court in *Dunedin* that "we see nothing wrong with transferring to the new user of a municipally owned water or sewer system a fair share of the costs new use of the system involves." *Dunedin, supra* at 317-318.

Plaintiffs argue that the charge for connecting to the expanded water supply is not proportional to the benefit because the Tax Tribunal already determined that the properties in question were benefited only by $2,000. However, plaintiffs' argument confuses two distinct questions— the increase in value to a parcel of property resulting from the water project and the per parcel cost of the water project. A special assessment, such as the one appealed to the Tax Tribunal here, must have a direct benefit on the property assessed, but is unrelated to actual use of the goods or services provided, while a fee is related to the cost of the actual goods or services provided. *San Marcos Water Dist v San Marcos Unified School Dist*, 42 Cal 3d 154, 162; 228 Cal Rptr 47; 720 P2d 935 (1986). The Tax Tribunal determined that the increase in value to each parcel was $2,000 (pursuant to the criteria of special assessments), simply because the water was made available to the parcel, even without any connection. However, the Tax Tribunal did not consider the instant question regarding the proportionality of a fee. The amount of a fee must be related to the costs of the regulation, *Bray, supra* at 160. Here, the uncontested cost of the water extension is $430,000. Defendant set the connection charge for each parcel of land on the basis of the size and use of the land. If all the owners of the parcels at issue connected to the water main and paid their full assessed charge to do so, the amount would equal the actual cost of the improvement, according to defendant. We decline to attempt to determine with mathematical precision the relation of the connection to the charge paid by the owner of each parcel of land, since we presume "that the amount of the fee is reasonable, unless the con-

trary appears upon the face of the law itself, or is established by proper evidence," and we find no evidence that the charge here is unreasonable. *Vernor, supra* at 168. In addition, we note briefly that defendant claims that the useful life of the watermain extension is twenty years and that the connection fee may be paid in equal installments over a period of twenty years. Thus, the fee would pay off the water extension over the life of the extension, leaving the township with no long-term benefit to the public far beyond the time that it is paid off, in contrast to the *Bolt* case. See *Bolt, supra* at 164. Thus, we conclude that the charge in question is "proportionate to the necessary costs of the service." *Bolt, supra* at 162.

Finally, we address the voluntariness of the charge. A fee is voluntary, *Bolt, supra* at 162, 167, while a special assessment and a tax are compulsory charges, McQuillin, *supra* at 12; *Dunedin, supra* at 319, n 8. Plaintiff claims that the charge at issue is not voluntary because "the Ordinance in effect places a lien of $7,187.50 plus interest of 6% and an inflation cost of 5% on Appellees' property and would adversely affect any future sale of that property." However, we find no evidence of an involuntary lien in the ordinance. It appears that property owners in the new water district need pay only the amount of the previously enacted special assessment when they decide to connect to the water system. We see no evidence inhibiting property owners from retaining their current wells or drilling new wells, or in fact from using no water at all if the property is not developed and they do not require it. Thus, we conclude that the connection charge is voluntary—those who decide to con-

nect must pay the fee and those who choose not to connect are not required to pay the fee.

On the basis of these factors, we conclude that the connection charge at issue in this case is a fee, rather than a tax or a special assessment. Conforming to the criteria of a fee set out in *Bolt*, *supra* at 161-162, the connection fee here serves a regulatory purpose, is proportionate to the necessary costs of the service, and is voluntary. Similar to the one-time hookup fee for new sewer service in *Handy v Rutland*, 156 Vt 397; 598 A2d 114 (1990), and the connection fees for new water and sewer service in *Dunedin*, *supra*, the connection fee here is imposed only when new users want to connect to the expanded system. We believe that defendant may properly charge a fee where the water service will benefit only those new users on whom the fee is imposed. See *Bolt*, *supra* at 165-166. Although plaintiffs claim that allowing defendant to charge a connection fee would undermine the Tax Tribunal's ruling and make their appeal of the special assessment futile, we disagree. In reducing the original $9,187.50 assessments, the Tax Tribunal appeal effectively fulfilled its function—plaintiffs now only have to pay $2,000 for the benefit conferred on their property by the mere availability of the municipal water line. If they choose not to connect, they need pay no more. Certainly this savings of over $7,000 makes this appeal process worthwhile. In addition, we do not believe that the successful appellate challenge to one method of financing automatically invalidates all other methods. In our judgment, local governments are not limited to one method of payment for any given improvement. Certainly these governments are accountable for their decisions at election

time, which is the proper forum for plaintiffs' dissatis-
faction with what they consider to be "high cost-low
benefit projects."

We reverse.