HOWELL TOWNSHIP v ROOTO CORPORATION

Docket No. 236440. Submitted May 6, 2003, at Lansing. Decided September 16, 2003, at 9:20 A.M. Leave to appeal sought.

Howell Township brought an action in the Livingston Circuit Court against the Rooto Corporation, seeking to recover pursuant to its ordinance the costs it incurred in extinguishing a fire at the defendant's packaging plant that caused the release of hazardous materials into the environment. The defendant moved for summary disposition on the basis that the local ordinance was improperly enacted, and that defendant had an absolute defense to liability under the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*, because the fire was deliberately set by a third party. The court granted the defendant summary disposition, agreeing that the ordinance was improperly enacted, but denied summary disposition based on the NREPA, concluding that there were questions of fact regarding how the fire started. The Court of Appeals, HOLBROOK, P.J., and MURPHY and TALBOT, JJ., reversed the decision of the trial court regarding the propriety of the ordinance. 236 Mich App 438 (1999). The Supreme Court affirmed the Court of Appeals decision and remanded the matter to the trial court. 463 Mich 347 (2000). The defendant again moved for summary disposition, arguing that Part 201 of the NREPA preempted the local ordinance, and that the defendant had an absolute defense to liability under MCL 324.20126(4). The township moved for summary disposition regarding its claims. The trial court, Daniel A. Burress, J., denied both motions for summary disposition, but concluded that the defendant could assert a defense of third-party liability, and that the township could assert a lack of due care argument in response to this defense. After briefs were resubmitted, the trial court granted the defendant summary disposition, concluding that the ordinance was preempted by the NREPA and that the NREPA protected the defendant from liability because a third party had started the fire. The township appealed.

The Court of Appeals *held*:

1. The township's ordinance providing for the recovery of costs associated with the release and cleanup of hazardous materials is preempted by the NREPA, MCL 324.20101 *et seq.*, because the ordi-

nance directly conflicts with MCL 324.20126(4)(d)(iii), which relieves a defendant from liability if the release was caused by a third party, whereas the ordinance provides no such defense to liability. In other words, the ordinance improperly attempts to prohibit that which the statute permits. Furthermore, the township's ordinance is preempted by the NREPA because the NREPA completely occupies the field of regulation concerning the recovery of response activity costs. The pervasive legislation the Legislature enacted regarding environmental response activities evidences the intent of the Legislature to occupy the field of regulation. The township's argument—that the NREPA is not pervasive because the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 USC 9601 *et seq.*, specifically provides the states with the power to impose additional liability or requirements with respect to the release of hazardous materials within a state and that Part 201 of the NREPA likewise grants local units of government with similar authority— is misplaced. The ordinance did not merely add to the requirements of the NREPA, it regulated contrary to the NREPA. Moreover, the CERCLA only reiterates the constitutional provision regarding powers reserved to the states. US Const, Am X. Finally, the express reservation of rights in the CERCLA and the silence in the NREPA in this regard suggest that the Legislature's intentions regarding preemption contrast with those of Congress in the CERCLA. The trial court did not err in concluding that the ordinance is preempted by the NREPA.

2. Although the NREPA provides a defense to liability in cases of third-party fault, MCL 324.20126(4)(d)(iii), it also provides that an owner or operator of a facility must exercise due care and take reasonable precautions to mitigate or help prevent a release of hazardous materials. MCL 324.20107a. To the extent that the trial court did not apply this statute in determining that the defendant had a defense to liability from the township's claims, it erred. The facts showed that the defendant's facility had been vandalized before, and that the defendant had few, if any, security measures in place at the facility. Whether the defendant exercised due care or took reasonable precautions in this case is a question the trial court must answer on remand.

Affirmed in part, reversed in part, and remanded for further proceedings.

ENVIRONMENT — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT — MUNICIPAL ORDINANCES — PREEMPTION.

A township ordinance providing for the recovery of costs incurred by the township in extinguishing and cleaning up a fire that resulted in the release of hazardous materials was preempted by the Natural

Resources and Environmental Protection Act because it directly
conflicted with the statute, and because the statute occupied the
field of regulation (MCL 324.20101 *et seq.*).

*Foster, Swift, Collins & Smith, P.C.* (by *Charles E. Barbieri* and *Kirsten M. McNelly*), for the plaintiff.

*The Kizer Law Firm, P.C.* (by *Thomas Kizer, Jr.*), for the defendant.

Before: BANDSTRA, P.J., and GAGE and SCHUETTE, JJ.

GAGE, J. This case involves a long legal battle between plaintiff Howell Township and defendant Rooto Corporation over compensation for costs the township incurred in responding to a fire at defendant's plant. The township sought compensation under Howell Township Ordinance 53. The trial court found Ordinance 53 preempted by Part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*, and dismissed the township's claims against defendant. We affirm in part, reverse in part, and remand for further proceedings.

I

A. FACTUAL BACKGROUND

Around Thanksgiving of 1995, a fire occurred at defendant's packaging plant located in Howell Township.[1] The conflagration caused a release into the environment of many chemical compounds, including chemicals defined by the Legislature as "hazardous materials." The local fire department evacuated the

---

[1] The parties submitted a stipulated statement of facts to the trial court.

area near the plant because of potentially toxic fumes. With regard to the actual cause of the fire, city of Howell Fire Chief James Reed opined that the fire was "probably intentionally set" and "was the result of arson."

The multitude of emergency personnel that responded to the fire requested payment for their services from the township totaling more than $75,000. Pursuant to the purported mandates of Ordinance 53, the township thereafter requested compensation from defendant for the costs that the township incurred by using the services of the various agencies. Defendant refused to compensate the township.

### B. PROCEDURAL HISTORY

In 1996, the township brought suit against defendant, alleging that Ordinance 53 required defendant to reimburse the township for expenses it incurred in quelling the fire on defendant's premises. The township moved for summary disposition, in part seeking a ruling that the township properly enacted Ordinance 53. The township also sought summary disposition in its favor on its claim for compensation under the ordinance.

Defendant likewise sought summary disposition, arguing in part that the township did not properly record the ordinance. Defendant also argued that summary disposition in its favor regarding plaintiff's claims was appropriate because Part 201 of the NREPA, provided defendant with an absolute defense to liability, notwithstanding the mandates of the ordinance.

The trial court granted defendant summary disposition of the township's claims brought pursuant to the

ordinance, agreeing that the township had not properly enacted the ordinance. The court, however, denied defendant's motion for summary disposition of plaintiff's claims based on the NREPA because there was a question of material fact regarding the cause of the fire. Plaintiff appealed to this Court, and this Court reversed the trial court's decision with regard to the ordinance. *Howell Twp v Rooto Corp*, 236 Mich App 438; 600 NW2d 412 (1999). The Supreme Court affirmed this Court's reversal and remanded the matter to the trial court. *Howell Twp v Rooto Corp*, 463 Mich 347; 617 NW2d 533 (2000).

On remand, defendant filed a motion for summary disposition of plaintiff's claims brought pursuant to the ordinance. Essentially, defendant argued that Part 201 of the NREPA preempts the ordinance and provides defendant with an absolute defense to liability because a third party ignited the fire. The township likewise moved for summary disposition of its claims brought under the ordinance. Essentially, the township argued that the plain language of the ordinance provided for strict liability and required defendant to reimburse the township for expenses incurred in quelling the fire. In addition, the township argued that the ordinance does not permit defendant to assert a defense based on a theory of third-party culpability. In essence, the township averred that the NREPA does not preempt the ordinance.

The trial court denied both parties' motions for summary disposition, but in denying the township's motion, the court stated that defendant was entitled to assert a third-party defense to liability and that the township could assert a lack of due care argument in opposition to the third-party defense. The court

directed the parties to submit their arguments in briefs and to submit a stipulated set of facts. The trial court issued a written opinion and order dismissing the township's claims, holding that Part 201 of the NREPA preempts the ordinance. In addition, the court held that Part 201 of the NREPA protected defendant from liability because a third party ignited the fire. Finally, the court found that defendant did not contribute to the conflagration.

II

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Thomas v United Parcel Service*, 241 Mich App 171, 174; 614 NW2d 707 (2000). Likewise, we review de novo the application of the theory of preemption, which is an issue of statutory interpretation. *Id.*

III

A. LEGAL CONTEXT

Townships, such as Howell Township, have no inherent powers, but have only those limited powers conferred on them by the Legislature or by the Michigan Constitution. *Graham v Kochville Twp*, 236 Mich App 141, 146; 599 NW2d 793 (1999). The township ordinance act, MCL 41.181, is the basic enabling act granting townships the power to enact ordinances that regulate the public health, safety, and general welfare. *Id.* While the provisions of the Constitution and law regarding counties, townships, cities, and villages must be liberally construed in their favor, the powers granted to townships by the Constitution and

by law must include only those fairly implied and not prohibited by the Constitution. Const 1963, art 7, § 34.

"[A] municipal ordinance is preempted by state law if 1) the statute completely occupies the field that ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997), accord *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977); see also *Michigan Coalition for Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 408; 662 NW2d 864 (2003). With regard to whether a statute preempts a municipal ordinance by completely occupying the field of regulation, our Supreme Court set forth several guidelines:

> "First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.
>
> "Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.
>
> "Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
>
> "Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." [*Rental Prop Owners Ass'n, supra* at 257, quoting *Llewellyn, supra* at 323-324 (citations omitted).]

With regard to determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject

"the test *is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.* Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required, or authorize what the legislature has expressly forbidden.

\*      \*      \*

"The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. *The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription.* Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail." [*Id.* at 262, quoting 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409 (emphasis in *Rental Prop Owners Ass'n*).]

With the legal context in mind, we review the trial court's finding that the township's ordinance is preempted by state statute. We note, however, that while the trial court did not directly analyze the theory on which it found the ordinance preempted, the court found that Part 201 of the NREPA "preempts the field,"

and further determined that the NREPA provided defendant with a defense of third-party liability. We conclude that the court essentially found the ordinance preempted by state law pursuant to either theory of preemption.

The Legislature permits townships to enact ordinances that authorize the recovery of costs that the township incurred while "providing emergency police or fire service[.]" MCL 41.806a. The Legislature also permits townships to enact cost recovery ordinances related to "emergency ambulance and inhalator service[s]." *Id.* Townships may enact such cost recovery ordinances even if the township provides such services jointly with another municipality. *Id.*

Purportedly pursuant to MCL 41.806a, the township enacted Ordinance 53 in 1995. The stated purpose of the ordinance was "to protect Howell Township from incurring extraordinary expenses resulting from the utilization of Township resources to respond to an incident involving hazardous materials[.]" Howell Township Ordinance 53, § 1. The ordinance mandates that

> [w]here a fire department and/or police department or any other agencies contracted by the Township respond to a call for assistance in connection with a hazardous materials release, actual costs or expenses billed to or incurred by the Township involving such a call or incident shall be imposed upon responsible parties[.] *[Id.,* § 5.]

The ordinance defines a "hazardous material" as "a chemical that is a combustible liquid, a flammable gas, explosive, flammable, an organic peroxide, an

oxidizer, pyrophoric, unstable reactive, water reactive, or radioactive." *Id.*, § 2. In addition, the ordinance defines a "release" as "[a]ny spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, leaching, dumping, or disposing into the environment of a hazardous material." *Id.*, § 3. Finally, the ordinance defines a "responsible party" as

[a]ny individual, firm, corporation, . . . or any other legal entity that accidentally, negligently, or intentionally causes or is responsible for a release of a hazardous material, either actual or threatened, or is an owner, tenant, occupant, or party in control of property from which hazardous materials are released. [*Id.*, § 4.]

## C. PART 201 OF THE NREPA

In 1994, the Legislature enacted a comprehensive scheme of regulation relating to the environment known as the "natural resources and environmental protection act" or the NREPA. See 1994 PA 451 (enacting MCL 324.101 *et seq.*). By enacting the NREPA, the Legislature reorganized, without fundamentally altering, the scattered array of existing legislation related to the environment in one all-inclusive statute. Senate Fiscal Agency Bill Analysis, SB 257, 320, July 19, 1994.

In June 1995, the Legislature amended Part 201 of the NREPA. 1995 PA 71 and 1995 PA 117. As a result, Part 201 of the NREPA now provides various forms of liability for persons responsible for environmental contamination. Stated laconically, "[t]he owner or operator of a facility [is liable] if the owner or operator is responsible for an activity causing a release or threat of release." MCL 324.20126(1)(a). Such an owner or operator is jointly and severally liable for

"[a]ny . . . necessary costs of response activity incurred by any . . . person consistent with rules relating to the selection and implementation of response activity[.]" MCL 324.20126a(1)(b). A township, as a "local unit of government," has standing to recover such response activity costs in a civil action. MCL 324.20135(1)(b).

Part 201 of the NREPA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing of hazardous substance into the environment[.]" MCL 324.20101(1)(bb). It also defines a "response activity" as "the taking of . . . actions necessary to protect the public health, safety, or welfare, or the environment[.]" MCL 324.20101(1)(ee).

### D. PREEMPTION—DIRECT CONFLICT

A review of both the ordinance and the statute shows that defendant's potential liability for the "response activity costs" that the township claims to have incurred under Part 201 of the NREPA is essentially identical to defendant's alleged liability for "costs or expenses" that the township possibly incurred under the ordinance. First, the hazardous chemical compounds involved in the fire that initiated application of the ordinance also fit within the purview of Part 201 of the NREPA. Second, the fire constitutes a release of defendant's hazardous chemical compounds under both the ordinance and Part 201 of the NREPA. Third, the NREPA's definition of a "response activity" under Part 201 includes those services for which the township seeks compensation. In other words, the township's expenses incurred in quelling the fire were "actions necessary to protect the public

health, safety, or welfare, or the environment[.]" MCL 324.20101(1)(ee). Thus, defendant's potential liability under Part 201 of the NREPA fundamentally overlaps defendant's alleged liability under the ordinance.

However, despite the similarities between the ordinance and Part 201 of the NREPA, only Part 201 of the NREPA provides defendant with a possible defense to liability. Part 201 of the NREPA relieves defendant from liability if "the release or threat of release was caused solely by . . . [a]n act or omission of a third party[.]" MCL 324.20126(4)(d)(iii). In contrast, the ordinance does not provide such a defense to potential liability. See Howell Township Ordinance 53, §§1-8.

In addition, only Part 201 of the NREPA provides a defendant with an opportunity to seek contribution in connection with a lawsuit under the NREPA from another potentially liable party. Specifically, the statute provides that "[a] person may seek contribution from any other person who is liable under section 20216 during or following a civil action brought under this part." MCL 324.20129(3). If a person seeks contribution, the court can consider equitable matters and the "relative degree of responsibility" of each of the parties. MCL 324.20129(3)(a), (b). In contrast, the ordinance does not provide such a defense to potential liability.

In *Builders Ass'n v Detroit*, 295 Mich 272; 294 NW 677 (1940), the Michigan Supreme Court held a city ordinance void where it directly conflicted with a state statute. In that case, the city enacted an ordinance prohibiting real estate commerce on Sundays. *Id.* at 273-274. The Legislature likewise enacted a statute prohibiting all business activities on Sundays, but provided an exception for those persons who

observed the Sabbath on Saturday rather than Sunday. The Court held the ordinance void because, by not providing the statutory exception, the ordinance attempted to prohibit that which the statute permits. *Id.* at 276.

In *AFSCME v Detroit*, 252 Mich App 293; 652 NW2d 240 (2002), this Court held that a city ordinance directly conflicted with a state statute because the ordinance mandated that the city council adopt a resolution relating to compensation of housing commission officers and employees, but the statute provided the city council with discretion to adopt such a resolution. *Id.* 309-311. In finding that the provisions directly conflicted, the Court reasoned that "[t]o uphold [the ordinance] would improperly render express language in the statute nugatory." *Id.* at 311.

In this case, we find that Ordinance 53 directly conflicts with Part 201 of the NREPA because the ordinance does not provide a defense to liability. In other words, the ordinance attempts to "prohibit that which the statute permits." The ordinance attempts to prohibit persons who emit hazardous substances, regardless of fault, from receiving the benefit of a cost-free response. However, Part 201 of the NREPA permits persons who emit hazardous substances to receive the benefit of a cost-free response, if a third party caused the emission of the hazardous substances. Put another way, the ordinance permits the township to demand reimbursement from the person who emitted the hazardous substance, regardless of whether a third party caused the emission, whereas the statute prohibits such reimbursement. Stated yet another way, the ordinance renders express language in the NREPA nugatory. For example, if the court applied the

ordinance, its application would render ineffective the potential defenses available to defendant.

Among the purposes and effects of both the NREPA and the ordinance is placing the cost of environmental protection and remediation on those parties responsible for the environment's deterioration. Compare Howell Township Ordinance 53, §§ 1, 5 with MCL 324.20102 and MCL 324.20126. With regard to purpose, § 1 of the ordinance provides:

> In order to protect Howell Township from incurring extraordinary expenses resulting from the utilization of Township resources to respond to an incident involving hazardous materials, the Township Board authorizes the imposition of charges to recover reasonable and actual costs incurred by the Township in responding to calls for assistance in connection with a hazardous materials release.

MCL 324.20102 provides, in relevant part:

> (c) That it is the purpose of this part to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the state.
>
> (d) That there is a need for additional administrative and judicial remedies to supplement existing statutory and common law remedies.
>
> (e) That the responsibility for the cost of response activities . . . should not be placed upon the public . . . .

A review of the ordinance and the statute shows that both share the same fundamental purpose. Therefore, we reject the township's contention that Part 201 of the NREPA is so dissimilar to the ordinance as to prevent preemption. Because we find that the ordinance directly conflicts with the statutory provisions of the

NREPA, Part 201 of the NREPA preempts application of the ordinance.

### E. PREEMPTION—OCCUPATION OF THE FIELD OF REGULATION

As noted, a statute also preempts a township ordinance if the statute completely occupies the field of regulation. *Rental Prop Owners Ass'n, supra* at 257. As noted above, several guidelines can be used to determine whether there is complete occupation of a field. Most relevant to this case are the provisions that a state statute preempts local regulation of the subject matter if the "pervasiveness of the state regulatory scheme" evinces the Legislature's intent to preempt local regulation in the field, or the nature of the regulated subject matter demands exclusive state regulation. *Llewellyn, supra* at 323, citing *Grand Haven v Grocer's Coop Dairy Co*, 330 Mich 694, 702; 48 NW2d 362 (1951). Several cases are instructive to our analysis.

In *Grocer's Coop Dairy Co, supra*, a dairy company argued that a Grand Haven city ordinance that regulated the sale of milk was invalid. *Id.* at 695. The ordinance limited the sale of milk to milk that was pasteurized " 'within five miles of the city limits[.]' " *Id.* at 696. However the dairy pasteurized its milk in Grand Rapids, which is more than five miles from Grand Haven. *Id.* at 697. The dairy company argued that pursuant to 1948 CL 288.131 *et seq.*, the Legislature completely occupied the field of regulation and, thus, rendered the city ordinance ineffectual. *Grocer's Coop Diary Co, supra* at 697. In opposition, the city argued that the Legislature had not enacted legislation related to the location of pasteurization in relation to the point of sale. *Id.* at 699.

The Supreme Court agreed with the dairy company. *Id.* at 701. After noting that the Legislature had enacted a provision imposing time limits on the sale of pasteurized milk, the Court held that "the legislature intended to and did take over plenary control of pasteurization of dairy products." *Id.* The Court reasoned that "by the enactment of the statutory regulations, the legislature deemed it had taken all precautions reasonably necessary against delivery of impure or contaminated dairy products within plaintiff city[.]" *Id.* In addition, the Court also deemed important the statute's silence regarding a grant "to cities [of] the power to impose additional restrictions or requirements[.]" *Id.* at 702.

In *Southeastern Oakland Co Incinerator Auth v Avon Twp*, 144 Mich App 39; 372 NW2d 678 (1985), the defendant township attempted to regulate, via a local ordinance, the plaintiff's landfill operations. *Id.* at 41. In the trial court, the plaintiff prevailed in arguing that the Solid Waste Management Act, then MCL 299.401 *et seq.*, preempted the defendant township from regulating landfill operations. *Id.* This Court affirmed the trial court, holding that the Solid Waste Management Act preempted local regulation of landfill operations. *Id.* at 46. This Court reasoned that the statutory scheme was so pervasive as to lead to the inference that the Legislature intended to preempt local regulation. *Id.* at 44. This Court found particularly important the "cohesive scheme of centralized and uniform controls" that the Legislature charged the Department of Natural Resources with directing. *Id.* This Court also found important the Legislature's contemplation of "significant local input in the devel-

opment of county plans" under then MCL 299.427 and MCL 299.428. *Id.*

Finally, in *Llywellyn, supra* at 314, the plaintiff city convicted the defendant of violating a city ordinance for showing movies containing obscene material as defined by city ordinance. *Id.* at 319-320. The defendant contended that MCL 750.343a, as it then existed and which set forth certain criminal offenses related to obscenity, preempted the ordinance. *Id.* The Michigan Supreme Court agreed, holding that the statute preempted application of the ordinance. *Id.* at 320. The Court reasoned that the statutory scheme "occupie[d] the field of regulation" that the city sought to regulate. *Id.* at 322. In particular, the Court noted that the Legislature enacted a "detailed five-section statutory framework intended to define and regulate obscenity." *Id.* at 326.

With that case law in mind, we find that Part 201 of the NREPA is so pervasive that it indicates the Legislature's intent to occupy the field of regulation. In this case, the Legislature has "taken all precautions reasonably necessary" to rectify the perceived problem. See *Grocer's Coop Dairy Co, supra* at 701. In other words, the Legislature enacted legislation reasonably necessary to assure that "the responsibility for the cost of response activities pertaining to a release . . . should not be placed upon the public[.]" MCL 324.20102(e). Regulation by a local unit of government is not necessary to further the Legislature's goal. In addition, Part 201 of the NREPA is silent regarding the authority of local units of government to "impose additional restrictions or requirements[.]" *Grocer's Coop Dairy Co, supra* at 702.

In this case, as in *Southeastern Oakland Co Incinerator Auth*, the Legislature charged the task of activities coordination and rules promulgation to a state department. Here, the Legislature charged the Department of Environmental Quality (DEQ) with those tasks. MCL 324.20104. The DEQ has since promulgated a series of multifaceted administrative rules relating to environmental contamination response activity. 1999 AC, R 299.5101 *et seq.* In addition, the Legislature, in Part 201 of the NREPA, "contemplated local input" in pursuing its objectives.

Finally, as in *Llewellyn, supra* at 326, the Legislature enacted a "detailed . . . statutory framework" intended to recover the costs of various environmental response activities from the parties necessitating the response. The statutory scheme provides at least eleven detailed sections that attempt to establish the response cost liability of persons associated with the use or storage of hazardous substances on their property. See MCL 324.20101; MCL 324.20102; MCL 324.20107a; MCL 324.20118; MCL 324.20119; MCL 324.20126; MCL 324.20126a; MCL 324.20128; MCL 324.20129; MCL 324.20131; MCL 324.20137. Thus, "[t]he breadth and detail of this statutory scheme provides an indication that the Legislature has preempted" the field of regulation relating to the recovery of costs incurred in responding to an incident involving the release of environmentally hazardous substances. See *Llewellyn, supra* at 327.

Plaintiff argues that Part 201 of the NREPA is not *pervasive* because the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 USC 9601 *et seq.*, expressly provides states with the power to impose "additional liability or require-

ments with respect to the release of hazardous substances within such State." 42 USC 9614(a). By analogy, then, plaintiff maintains that Part 201 of the NREPA implicitly empowers lower units of government with a similar right to regulate.

Although courts interpreting the NREPA often look to the CERCLA for guidance, *Genesco Inc v Dep't of Environmental Quality*, 250 Mich App 45, 50; 645 NW2d 319 (2002), plaintiff's analysis is fundamentally flawed. First, as discussed above, the ordinance did not simply add to the baseline requirements of the NREPA; rather, the ordinance regulated contrary to the express mandates of the NREPA. Second, 42 USC 9614(a) only reiterates that which the United States Constitution demands. The United States Constitution commands that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." US Const, Am X. In fact, environmental regulation "clearly falls within the exercise of even the most traditional concept of what is compendiously known as the [state's] police power." *Huron Portland Cement Co v Detroit*, 362 US 440, 442; 80 S Ct 813; 4 L Ed 2d 852 (1960). In addition, this state's Constitution expressly mandates that "[t]he legislature shall provide for the protection [of the environment.]" Const 1963, art 4, § 52. Thus, it is apparent that the United States Congress merely reiterated the obvious when enacting 42 USC 9614(a) and that plaintiff's CERCLA analogy is misplaced. Further, plaintiff's analogy proves the opposite of what plaintiff contends. In other words, the Legislature's silence regarding the reservation of powers to local units of government compared to the CERCLA's express reservation

suggests that the Legislature's intentions regarding preemption contrast with those of the CERCLA's.

We generally agree with defendant's argument that allowing municipalities to design their own cost recovery scheme would foster confusion and uncertainty, and would decrease the effectiveness of Part 201 of the NREPA. Clearly, local units of government imposing liability on parties whom the NREPA specifically exempts would defeat the Legislature's stated purpose. Thus, Part 201 of the NREPA preempts application of the ordinance.

IV

After finding the ordinance preempted by state law, we now turn to the township's alternative argument. The township argues that even if a third-party fault defense applied, the trial court improperly applied the third-party fault defense in this case. The township argues that even if a third party contributed to the fire, defendant is still liable under the ordinance because its conduct contributed to the fire. However, because state law preempts the ordinance, the township's claim for reimbursement must fall under Part 201 of the NREPA.[2] To the extent that the trial court addressed the third-party fault defense found in Part

---

[2] We note that in the township's third amended complaint, the township brought a claim under Part 201 of the NREPA. However, after the trial court granted partial summary disposition with regard to the claim under Ordinance 53 on the ground that the ordinance was improperly enacted, the parties agreed to dismiss without prejudice all the township's claims, with the exception of the claim under the ordinance. Regardless, in subsequent proceedings and pleadings, the parties continued to mention the claim brought under the NREPA. From the record, it is unclear whether the township "renewed" its claim under the NREPA or filed a subsequent amended complaint to allege this claim.

201 of the NREPA, we agree that the trial court improperly applied the defense in this case.

As noted above, Part 201 of the NREPA provides a defense to liability in that "[a] person who owns or operates a facility in which the release or threat of release was caused solely by . . . [a]n act or omission of a third party [is not liable.]" MCL 324.20126(4)(d)(iii). The township insists that the word "solely" required the trial court to find that defendant did not contribute to the cause of the fire. Defendant, however, maintains that the township's argument is inconsequential under the current statute in that the current statute does not require a party asserting the third-party defense to establish that they exercised due care or took reasonable precautionary measures.

Although when the Legislature amended Part 201 of the NREPA, it removed the "due care" and "reasonable precautions" language from MCL 324.20127(1)(c), the Legislature contemporaneously inserted the same language in the current version of MCL 324.20107a. In other words, the amendment was merely structural.

Notwithstanding the defense to liability provision, Part 201 of the NREPA provides, in pertinent part:

> (1) A person who owns or operates property that he or she has knowledge is a facility shall do all of the following with respect to hazardous substances at the facility:
>
> (a) Undertake measures as are necessary to prevent exacerbation of the existing contamination.
>
> (b) Exercise *due care* by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances, mitigate fire and explosion hazards due to hazardous substances, and allow for the intended use of the facility in a manner that protects the public health and safety.

(c) Take *reasonable precautions* against the reasonably foreseeable acts or omissions of a third party and the consequences that foreseeably [sic] could result from those acts or omissions.

(2) Notwithstanding any other provision of this part, a person who violates subsection (1) is liable for response activity costs and natural resource damages attributable to any exacerbation of existing contamination and any fines or penalties imposed under this part resulting from the violation of subsection (1) but is not liable for performance of additional response activities unless the person is otherwise liable under this part for performance of additional response activities. The burden of proof in a dispute as to what constitutes exacerbation shall be borne by the party seeking relief. [MCL 324.20107a (emphasis added).]

It is clear that the NREPA still includes "exceptions to the exceptions" from general liability.

From the record, it appears that the trial court did not apply the provisions of MCL 324.20107a to the instant case. Further, neither party mentioned the provisions of MCL 324.20107a in its brief. In its opinion dated August 8, 2001, the court acknowledged that the issue before the court was whether "the fire was caused, in whole or in part, by Rooto's lack of due care in failing to secure its facility and/or exercise due care to prevent vandalism or other crime at its facility." The court then stated:

The township's position that negligent security, lack of nighttime security, fire alarms, smoke alarms, door or window alarms, sprinklers, lighting in the rear of the building, security fencing or other security contributed to the fire is not supported. It does not logically follow that the presence of fire or smoke alarms, lighting, sprinklers, security fencing or other security would have prevented the arson.

At best, the township may be able to argue that a fire suppression system would have helped increase the speed

at which the fire was extinguished. Nothing short of catching the arsonists before they started the fire could have been done by Rooto to prevent the fire. No act of Rooto or its owner or agent caused or contributed to the fire. Thus, Rooto cannot be held liable for response costs pursuant to ordinance 53.

However, in its analysis, the trial court failed to mention anything regarding due care and failed to determine whether defendant took reasonable precautions. In failing to take all provisions of MCL 324.20107a into account, the trial court erred. It is axiomatic that "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). By not applying MCL 324.20107a, the trial court rendered the provision nugatory.

Although the trial court apparently reviewed defendant's precautionary and security measures, it did so under an incorrect legal standard. In the trial court's opinion, the court commented on whether defendant's security measures would have "prevented an arson" or "contributed to the fire." However, the NREPA speaks of a facility owner's "reasonable precautions" and a facility owner's efforts related to "due care . . . to mitigate" environmental contamination.

The parties stipulated that before the instant fire, defendant's facility had been the site of five past criminal acts of vandalism or breaking and entering. Two of the acts took place in the office area of the facility, and the other three (which consisted of an illegal dumping and two acts of vandalism to outside storage tanks) occurred directly outside the packaging part of

the building. The parties agree that defendant had no security alarm in the packaging portion of its building, it did not have a night watchman or a nighttime security firm checking the facility at night, it did not have any fire detectors or fire alarms in the production areas and warehouses at the time of the fire, and it did not have security fencing or automatic fire suppression systems. It is clear that while the lack of various security measures may not have "prevented" the blaze, defendant's security measures had to be "reasonable." Likewise, while nighttime security may not have prevented the fire, the question remains whether it was "reasonable" for defendant not to have employed nighttime security in light of the prior incidents of vandalism. These questions must be answered by the trial court.

V

In sum, we conclude that Howell Township Ordinance 53 directly conflicts with Part 201 of the NREPA in that it does not provide for a defense of third-party liability. Therefore, the trial court did not err in determining that the ordinance is preempted by state law. However, we further conclude that to the extent the trial court addressed the third-party defense to liability provided in Part 201 of the NREPA, the trial court erred in failing to consider MCL 324.20107a in determining whether defendant's alleged lack of due care contributed to the cause of the fire. Therefore, we reverse the trial court's decision in that regard.

Affirmed in part and reversed in part. We remand to the trial court to allow the parties to pursue their claims and defenses, if any, under Part 201 of the

NREPA, and for further proceedings consistent with this opinion. We do not retain jurisdiction.