Taylor, J.
This case concerns Michigan’s Ski Area Safety Act (SASA), MCL 408.321 et seq., and whether a skier’s collision with a timing shack is a danger that inheres in the sport, precluding recovery for injuries that result. We conclude that it is such a danger and that defendant is entitled to judgment as a matter of law under the sasa.
*22 I. FACTS AND LOWER-COURT ACTIONS
Robert C. Anderson was a member of his high school’s varsity ski team. On January 5, 1999, he participated in an interscholastic giant-slalom competition, scheduled at Pine Knob Ski Resort, Inc. (Pine Knob). While his first run was uneventful, on his second run, after passing the last gate on the way to the finish line on the slalom racecourse, he “caught an edge” as he neared the finish line and lost his balance. Before he could recover, he collided with the shack housing the race timing equipment. He suffered lacerations to his face, arm, and leg and broke several bones and teeth.
Anderson, through his parents as his next friends, sued, alleging negligence by the resort. Pine Knob responded by seeking summary disposition on the basis that it, as a ski-area operator, was immune from premises-liability claims by recreational skiers, of the sort here presented, because of the SASA. Pine Knob also argued that summary disposition was warranted, should it fall outside the protections of the sasa, under the common-law doctrine that bars recovery for plaintiffs who are injured by open and obvious hazards. The trial court denied defendant’s motion, ruling that these claims fell outside the immunity granted by the sasa and that questions of fact existed, foreclosing summary disposition on the common-law premises-liability issue.
On appeal, the Court of Appeals affirmed in an unpublished opinion per curiam, agreeing that this circumstance fell outside the SASA. With regard to defendant’s assertion that the danger was open and obvious to plaintiff and, thus, the claim was barred on *23 that common-law basis, the Court of Appeals agreed it was open and obvious, but held that the bar did not apply here because the risk of harm was unreasonable.
We granted defendant’s application for leave to appeal. 467 Mich 897 (2002).
E. STANDARD OF REVIEW
This case concerns a trial court’s decision on a motion for summary disposition under MCR 2.116(C)(10), as well as a matter of statutory construction. We are asked to determine whether a set of circumstances falls within the scope of MCL 408.342(2). To do this, if the language of the statute is clear, we simply apply the terms of the statute to the circumstances of the case. Veenstra v Washtenaw Country Club, 466 Mich 155, 159-160; 645 NW2d 643 (2002). Because this is a matter of law and concerns a summary-disposition motion under MCR 2.116(C)(10), we review de novo. Chandler v Muskegon Co, 467 Mich 315, 319; 652 NW2d 224 (2002).
m. ANALYSIS
The Legislature, in 1962, enacted the SASA in an effort to provide some immunity for ski-area operators from personal-injury suits by injured skiers. The statute states:
(1) While in a ski area, each skier shall do all of the following:
(a) Maintain reasonable control of his or her speed and course at all times.
(b) Stay clear of snow-grooming vehicles and equipment in the ski area.
*24 (c) Heed all posted signs and warnings.
(d) Ski only in ski areas which are marked as open for skiing on the trail board described in [MCL 408.326a(3)].
(2) Each person who participates in the sport of siding accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. [MCL 408.342.]
As can be seen, this act specified that skiers have the responsibility to ski under control, as well as to heed signs and warnings and avoid snow-grooming vehicles and equipment. Moreover, the act continued that, by skiing, skiers are held to have accepted certain types of risks from dangers that inhere in the sport as long as those dangers are “obvious and necessary.” Id.
In determining if the potential of collision with a timing shack is a danger inherent in the sport and, if it is, whether it was a danger that was obvious and necessary, we must study the structure of the statute and the language employed by the legislators in MCL 408.342(2).
This subsection identifies two types of dangers inherent in the sport. The first can usefully be described as natural hazards and the second as unnatural hazards. The natural hazards to which the act refers without limit are “variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris . . . .” MCL 408.342(2). The unnatural hazards include “collisions with ski lift towers and their com *25 ponente, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.” MCL 408.342(2). For both types of hazards, the examples are clearly only examples because the Legislature specifically has indicated that the covered dangers are not limited to those expressly described. The examples are employed to give the reader guidance about what other risks are held to be assumed by the skier. We undertake this analysis by determining what is common to the examples. This exercise is what legal scholars describe as discerning meaning by use of the doctrine of ejusdem generis,[1] and leads us to conclude that the commonality in the hazards is that they all inhere in the sport of skiing and, as long as they are obvious and necessary to the sport, there is immunity from suit.
With that understood about the statute and its proper construction, we turn to whether the timing shack was within the dangers assumed by plaintiff as he engaged in ski racing at Pine Knob.
There is no disputed issue of fact in this matter that in ski racing, timing, as it determines who is the winner, is necessary. Moreover, there is no dispute that for the timing equipment to function, it is necessary that it be protected from the elements. This protection was afforded by the shack that all also agree was obvious in its placement at the end of the run. We have then a hazard of the same sort as the ski towers and snow-making and grooming machines to which *26 the statute refers us. As with the towers and equipment, this hazard inheres in the sport of skiing. The placement of the timing shack is thus a danger that skiers such as Anderson are held to have accepted as a matter of law.
In adopting this approach, we reject the argument of the plaintiff, which was adopted by the Court of Appeals, that, while some sort of protection of the timing equipment may have been required, the shack was larger and more unforgiving than other imaginable, alternative timing-equipment protection might have been. We find nothing in the language of the statute that allows us to consider factors of this sort. Once hazards fall within the covered category, only if they are unnecessary or not obvious is the ski operator liable.
To adopt the standard plaintiff urges would deprive the statute of the certainty the Legislature wished to create concerning liability risks. Under plaintiffs standard, after any accident, rather than immunity should suit be brought, the ski-area operator would be engaged in the same inquiry that would have been undertaken if there had been no statute ever enacted. This would mean that, in a given case, decisions regarding the reasonableness of the placement of lift towers or snow groomers, for example, would be placed before a jury or judicial fact-finder. Yet it is just this process that the grant of immunity was designed to obviate. In short, the Legislature has indicated that matters of this sort are to be removed from the common-law arena, and it simply falls to us to enforce the statute as written. This we have done.
Finally, as this matter is fully resolved by reference to the SASA, we need not consider whether defendant *27 retains a duty under common-law premises liability.[2] In accord with this, the remaining portions of the judgment of the Court of Appeals that addressed this issue are vacated.
IV. RESPONSE TO DISSENTS
The dissents would go even further in this matter than plaintiff has urged, advancing the remarkable proposition that this statute should be read to create a test for tort liability, which can be properly characterized as: Could this accident have been avoided if the shack were in a different place than it was? If so, defendant loses.
We believe that this new proposed standard is a most ill-advised direction for the law to take in this case, or in virtually any other case that does not concern strict liability. The reason is that it can be predicted with one hundred percent certainty that the answer to the dissents’ question in this case, and any other case where such a standard would be applied, is: Of course, if the shack were somewhere else, plaintiff would not have hit it. The problem this standard creates is that it fails to recognize that no accident, be it a skiing accident, a car accident, or an airplane crash, is unavoidable. After all, if the defendant had not opened the ski area that day, or, to deal with our examples, the driver had not driven his car or the pilot had not taken off, then there would have been *28 no accident. Alas, however, defendant, having opened the ski area, or ventured to drive or fly, is liable. Let us be clear, what the dissent proposes is nothing less than an abandonment of common-law liability rules and the imposition of strict liability on any occasion there is an accident.
When one reflects on the roots of tort law in this country, it is clear that our legal forebears spumed such a “hindsight” test and, instead, adopted a foreseeability test for determining tort liability. See the venerable Palsgraf v Long Island R Co, 248 NY 339; 162 NE 99 (1928), a case that every law student since 1928 has studied, and countless hornbooks and cases too numerous to require citation, where this is made clear. Said plainly, the common-law test for tort liability is not a “could-it-have-been-avoided” test, rather, it is a “was-this-foreseeable-to-a-reasonable-person-in-this-defendant’s-position” standard. Before today, none would have contested that there were no assertions to the contrary in our case law. No longer can that be said.
That the dissents would propose to abandon the foreseeability test and adopt the hindsight test is startling enough, but it is even more strange to do so here where we have a statute that was designed not only to preclude strict liability for ski operators, but also to preclude some doctrines of traditional, common-law liability in these areas. Nevertheless, were the dissent the majority, that is not what would take place. To be understood then is that the dissents invite us to join them in transmogrifying our law and this statute by converting both into vehicles imposing strict liability on defendants. We decline most adamantly to do so.
*29 To deal with the beneficiaries of this statute briefly, one can only imagine their dismay, were the dissents the law, when all along they no doubt thought they were being protected by this legislation to then learn not only that they were not being protected, but also that they would be in the unenviable position of not even having the defense that the accident for which they are being sued was not foreseeable. Their dismay would be justified.
In sum, the dissents are wrong as a general matter with regard to how liability is determined, and they are particularly wrong with regard to ski-area operators who are protected by the statute here under consideration that the Legislature enacted with the clear goal of advantaging, not disadvantaging, ski-area operators in tort litigation with skiers.
V. CONCLUSION
Plaintiff’s claims should have been barred as a matter of law. The risk of this collision was accepted by plaintiff and thus his claim is barred under the sasa. We reverse the judgment of the Court of Appeals. This case is remanded to the circuit court for proceedings consistent with this decision.
Corrigan, C.J., and Young and Markman, JJ., concurred with Taylor, J.

 “Under [the doctrine of] ejusdem generis, general terms are interpreted to include only items that are ‘of the same kind, class, character, or nature as those specifically enumerated.’ ” LeRouce v Secretary of State, 465 Mich 594, 624; 640 NW2d 849 (2002) (Kelly, J., dissenting opinion) (citation omitted).

 Justice Weaver, in her dissent, has discussed common-law premises-liability doctrines, in particular the “open and obvious” doctrine, and feels this case turns on the application of them to these facts. This whole approach is off-target because the common law no longer controls once the Legislature enacts statutes that preempt it. Const 1963, art 3, § 7. That has happened here.