CAVANAGH, J.
(dissenting). I dissent from the majority’s conclusion that plaintiffs claim against defendant Samuel-Whittar Steel, Inc. (hereafter defendant), for negligent retention of defendant Michael Brown (hereafter Brown) was correctly dismissed as a matter of law. At the very least, plaintiff raised a genuine issue of *571 material fact regarding whether information about Brown’s “ ‘habits, temperament, or nature,’ ” which was reported to his employer, gave the employer sufficient notice of Brown’s acts of “ ‘impropriety, violence, or disorder,’ ” see Hersh v Kentfield Builders, Inc, 385 Mich 410, 413; 189 NW2d 286 (1971), quoting 34 ALR2d 390, § 9 , so as to make the employer liable for negligently retaining him.
Plaintiff, a then-23-year-old night security guard who was assigned by her employer to work at defendant’s plant, was raped by Brown after he forced plaintiff into a women’s restroom while she was checking to make sure a block of offices was secure. Brown was a midnight foreman employed by defendant.
In the months leading up to this rape, Brown had made sexually aggressive comments to plaintiff on a daily or near-daily basis. In fact, plaintiffs coworker testified that plaintiff frequently locked the door to her guard shack and pretended that she was asleep to prevent Brown from entering and to discourage him from speaking to her.
Plaintiff reported Brown’s conduct not once, not twice, but at least three times to Brown’s supervisor, defendant Harlan Gardner. Plaintiff told Gardner, the plant manager, that Brown continually made crude sexual comments to her, and she asked Gardner to make Brown stop. Three other security guards informed plaintiff that they, too, had complained to their superiors regarding Brown’s conduct. Plaintiff also asked Brown to stop making the comments on numerous occasions. Despite these multiple complaints, and despite Gardner’s telling plaintiff each time that he would “take care of it,” Brown continued to bombard plaintiff with his sexually aggressive comments until he eventually raped her.[1]
*572 Nothing in Hersh, the case on which the majority relies, compels a conclusion that repeated, sexually aggressive comments duly reported to an employer can never put the employer on notice that the offending employee “ ‘may eventually commit an assault...”* [2] Hersh, supra at 413, quoting 34 ALR2d 390, § 9. In *573 Hersh, this Court quoted these pertinent words from the ALR to describe an employer’s duty in relation to hiring or retaining employees:
“[A]n employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer. The employer’s knowledge of past acts of impropriety, violence, or disorder on the part of the employee is generally considered sufficient to forewarn the employer who selects or retains such employee in his service that he may eventually commit an assault, although not every infirmity of character, such, for example, as dishonesty or querulousness, will lead to such a result.” [Hersh, supra at 412-413, quoting 34 ALR2d 390, § 9 (emphasis added).]
Critically, the duty of an employer is set forth in the first sentence of the quoted passage: an employer has the duty to use “due care” in selecting or retaining employees. The balance of the passage simply provides guidance on what will generally be considered forewarning of a potentially dangerous employee. But when there are no known “past acts of impropriety, violence, or disorder,” the duty of the employer is not changed or lessened because knowledge of “past acts of impropriety, violence, or disorder” is not the only mechanism by which an employer can be forewarned of potentially assaultive behavior. Further, the ALR passage does not restrict the term “impropriety, violence, or disorder” in any way, although the majority appears to restrict the phrase to mean only violent acts or, at best, specific words it has arbitrarily decided would suffice. See ante at 555 and n 24.
Under a proper understanding of the principles of negligent retention, it is clear that plaintiff presented a genuine issue of material fact with respect to whether *574 defendant breached its duty to use due care in retaining Brown in light of defendant’s knowledge of how Brown was conducting himself in the workplace. Given plaintiffs allegations, it is for a jury to decide whether defendant’s knowledge of Brown’s actions sufficiently alerted defendant that there was a potential for assault and, if so, whether defendant should have investigated the situation or taken any corrective action.
And the majority errs in concluding that Hersh precludes plaintiffs claim as matter of law. First, although our state’s published cases addressing negligent-retention claims involve facts such as a past history of violence or records of fear expressed by employees, this in no way precludes a case in which a past history of violent behavior is lacking from reaching a jury. An employer has a duty to use due care in retaining an employee, and any number of things can suffice to provide notice to the employer that its retention of a particular employee may need a second look. Here, certainly Brown’s conduct, which consisted of repeatedly telling his subordinate[3] that he wanted to commit a violent sexual act involving her, can be considered “ ‘habits, temperament, or nature’ ” suggesting that he was “ ‘unworthy... to deal with the persons invited to the premises by the employer’ ” because of a potential for assaultive behavior. Hersh, supra at 413, quoting 34 ALR2d 390, § 9. Indeed, the multiple reports of this conduct to the plant manager should have provided some indication to defendant that Brown was unfit to be a supervisor, much less an *575 employee, and that he may have the potential for assault given his unambiguous indications that he wanted to “fuck” plaintiff and pull her hair.[4] Moreover, certainly Brown’s past conduct toward plaintiff would fall into the category of “impropriety” and perhaps “disorder,” which disorder may signal to a reasonable employer that Brown had the capacity to commit an assault on plaintiff.[5] Because a reasonable jury could reach that same conclusion, whether the employer was on notice is a factual matter, as the Court of Appeals correctly found. And this is all the more true given that the person Brown was harassing on the night shift was a subordinate female who worked, to a large extent, alone.
The majority justifies its holding by opining that “[mjodern workplace speech is, at times, boorish and undesirable ....” Ante at 557.[6] But a function of the majority’s rejection of a blanket rule that would “treat *576 every employee who makes inappropriate workplace comments as a potentially violent criminal,” ante at 557-558 is an equally dangerous rule that no workplace speech can form the basis for a negligent-retention claim. Although the majority points to the principle that “ ‘ “not every infirmity of character’ ” is sufficient to forewarn the employer of its employee’s violent propensities,” ante at 557, quoting Hersh, supra at 413, quoting 34 ALR2d 390, § 9, the majority allows for no infirmity of character, shown by speech, to be sufficient to allow a jury to decide whether, in light of the employee’s conduct, the employer had a duty to act. See ante at 547-548, 555. Thus, the majority creates its own new rule, inconsistent with Hersh and the ALR passage, that as a matter of law, employers who are notified that an employee is verbally harassing another in a sexually aggressive way can never be held liable for retaining that employee if that employee undertakes to carry out the sick sexual fantasies that employee has been verbalizing. Id. This in turn means that employers need not respond to complaints about such matters, thus eliminating another workplace protection for innocent employees.[7]
The majority also predicts that “[a]n employer diligently seeking to avoid such broad tort liability would inevitably err on the side of over-inclusiveness and cast a wide net scrutinizing all employee speech that could be remotely construed as threatening.” Ante at 557 *577 (emphasis in original). First, I disagree that the status quo of allowing a jury to determine whether, under the totality of the circumstances, an employer should have been on notice is “broad tort liability.”[8] Moreover, I fail to see why it would not be more desirable to have employers scrutinize threatening speech than to ignore it when reported and have an innocent employee raped. The majority’s preferred lower level of employer responsibility will ensure that to the extent that “[m]odern workplace speech is, at times, boorish and undesirable,” ante at 557, it will remain that way. Last, the same exercise of reviewing an employee’s fitness is necessary when the employee has a criminal history or violent past, and just as the presence of a criminal history or violent past will not always be sufficient notice for a negligent-retention claim, neither will every instance of questionable employee speech.[9]
*578 The particular facts of this case refute the majority’s statement, ante at 556, that Brown’s comments “[stood] alone” and further illuminate why the question in this case is one for a jury. Brown’s comments did not “stand alone.” Rather, Brown’s comments must be assessed in light of the circumstances that existed when he made the comments: Brown was the nightshift plant manager; plaintiff had to comply with Brown’s supervisory requests; plaintiff worked alone; few, if any, other people were around or accessible; Brown’s comments were relentless over a period of months; plaintiff complained about Brown’s behavior to coworkers and Brown’s employer; and plaintiff would lock herself in her guard shack to avoid contact with Brown. Brown’s behavior cannot be viewed in a vacuum. Perhaps it might be more tempting to characterize Brown’s comments as typical “modern workplace speech” were this a typical “modern workplace” environment. In that context, perhaps comments like these might be made when an audience is present — to impress one’s buddies or get a laugh from onlookers. But Brown did not make the vast majority of his comments in that type of setting.[10] Rather, he made them to plaintiff late at night *579 when he was acting as her supervisor and no one else was around. He made them for no one to hear but her. These unique circumstances should prevent the majority from chalking up Brown’s comments to “modern workplace speech” and, consequently, removing from the jury the question whether the comments were potentially harbingers of dangerous behavior.
And, unlike the majority, I do not believe that the Court of Appeals “expanded” an employer’s duty at all. See ante at 566. As discussed, “[A]n employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer.” 34 ALR2d 390, § 9 (emphasis added). Whether this employer knew or should have known that Brown’s “habits, temperament, or nature” made him unfit to supervise plaintiff on a sparsely populated nightshift because of the potential for assault (as opposed to the certainty of an assault) was a question for the jury. Also for the jury to decide was whether defendant breached its duty to keep plaintiff safe by failing to take any corrective action once it had knowledge of Brown’s relentless harassment.* [11] As such, the Court of Appeals *580 properly found that a genuine issue of material fact existed regarding whether defendant, having been informed multiple times about Brown’s conduct, should be held liable for negligently retaining Brown. Rather than usurp the role of the jury in this matter, I would remand the case for trial.
Weaver and Kelly, JJ., concurred with Cavanagh, J.

 The majority opines that plaintiffs personal failure to predict Brown’s potential to carry through with his verbally expressed desire to *572 commit a sexually violent act involving her “weighs definitively against imposing a duty on defendant.” Ante at 556; see also ante at 555 n 24. The obligation to assess its employee’s fitness for a job falls on the employer, not on the victims of that employee’s actions. Many times an employee will have no idea of another employee’s propensity for violence; certainly a member of the public would not. Thus, it is the employer’s job to gauge whether a particular employee is fit to remain in a position or in the workplace. Indeed, the essence of a negligent retention claim is that the employer breached a duty to ensure that the workplace was safe. The fact that plaintiff did not interpret the comments as harbingers of the rape is immaterial. Moreover, she did report the comments, which definitively placed the duty on defendant to assess the danger, if any, and respond appropriately. It is for the jury to determine whether defendant decided correctly.
The majority’s statement places an irrational burden on employees that will result in complaints going unheeded. Now an employee must specifically state to an employer, “I believe that I might be killed,” or “I believe that I might be raped.” I can only imagine how quickly the reaction of supervisory staff will shift from concern and diligence to apathy from a sense that employees are overreacting and “crying wolf.”

 Despite its assertion to the contrary, ante at 555 (“We do not hold that an employee’s words alone can never create a duty owed by the employer to a third party.”), the majority does find that sexually aggressive comments can never put an employer on notice. See ante at 547-548. The majority holds that absent a criminal record or violent history, an employer cannot be held hable, “solely on the basis of the employee’s lewd comments,” for a rape the employee commits. Ante at 548. If the majority believed that some comments could, depending on the circumstances, suffice, then it would find a genuine issue of material fact for the jury in the present case. But even if its opinion were internally consistent, the majority’s artificial line-drawing (“This obviously would be an entirely different case if Brown had threatened to rape plaintiff and defendant was aware of these threats,” ante at 555), reinforces that assessing whether particular comments should put an employer on notice is a factual matter for the jury.

 Plaintiff was Brown’s subordinate in the sense that she was to report to him any problems she encountered on her shift or anything that was amiss in the plant. In fact, he was the only person to whom plaintiff could report because he was the midnight foreman and the sole person with authority in the plant. He did not, however, have the authority to, as his boss described, “tell [plaintiff] what to do.”

 Might this not be equated with Brown saying he wanted to “rape” plaintiff and pull her hair?

 The majority misconceives my position as broad and all-encompassing. But I do not contend that “every inappropriate workplace comment could supply sufficient notice of an employee’s propensity to commit future violent acts,” ante at 557, nor do I assert that “any inappropriate workplace speech... is sufficient to create a jurysubmissible question of negligent retention,” ante at 562.1 do not even believe that sexually charged speech in every situation should put an employer on notice of a potential assault. Rather, I believe that in this particular case, and under these particular facts, a question for the jury was created. And while the majority opinion is rife with suggestion that I have concluded that defendant was hable for this rape, I make no such conclusion. But neither do I conclude that, as a matter of law, defendant cannot be found hable.

 “Boorish” is defined as “[ljike a boor; rude; ill-mannered.” The American Heritage Dictionary, New College Edition (1981). Certainly Brown’s telling plaintiff that he wanted “to fuck [her] and pull [her] long hair,” that he liked how she “sh[ook] her ass,” that she “ha[d] big tits,” and that he had “something she can suck on” goes miles beyond being “boorish.”

 Interestingly, the majority concludes that Brown’s “boorish” speech was “no predictor at all of future criminal behavior . .. .” Ante at 557. I beg to differ and believe that the facts speak for themselves. I point out as well that had Brown told plaintiff, “I am going to rape you,” and had she reported that to defendant, that, too, under the majority’s analysis, would have been insufficient to put defendant on notice that it had a duty to reevaluate Brown’s presence in the workplace because defendant had no criminal history or violent past. See ante at 547-548.

 The concurring justice’s histrionic list of questions and concerns and the majority’s overwrought proclamation that my position would render “large numbers of job applicants effectively unemployable,” ante at 565, again ignores that I do not foster a general rule that all workplace speech has negligent-retention implications. Rather, I only advocate that in this case, and in these particular circumstances, there was a question of fact for the jury. Moreover, I would note that the questions Justice Markman poses and others like them apply just as easily to situations in which an employee’s criminal history or violent past must be assessed. I would also observe that Justice Markman is quite seriously overreacting to the analysis contained in my dissent by demanding answers to at least 32 questions, not one of which is implicated in this case. Just as in myriad other cases resolved before this one, not every permutation of the facts possibly imaginable needs to be, or should be, resolved. Justice Markman’s list of incessant questions is best reserved for the day we are presented with a factual situation that requires us to answer them. But as it is, the outcome that I advocate in this case is simply the result of applying law to facts and is no different than the many other resolutions reached by reviewing courts in which additional, but untimely, questions flow naturally from the answer given.

 The majority concludes that “[a]s a general rule, an employer cannot accurately predict an employee’s future criminal behavior solely on the *578 basis of the employee’s workplace speech.” Ante at 557. But “accurate prediction” is not the standard for reviewing speech, just as it is not the standard for reviewing conduct or history. No employer can be expected to predict assaultive behavior with 100 percent certainty in any situation. But an employer can be found to have been put on notice that an assault “may eventually” be committed. Hersh, supra at 413 (emphasis added).

 The record indicates that Brown did make one sexually charged comment to plaintiff in front of another guard. That guard testified that Brown approached plaintiff when plaintiff was eating a “Blow Pop” lollipop. Brown stated, “I got something better [than] that you can suck on.” The guard responded by telling Brown not to speak in that manner.
In response to the majority’s statement, ante at 549 n 5, that the record is unclear regarding when Brown made his comments, I would note that although plaintiff, at one point, stated that the comments began *579 on the afternoon shift, she stated immediately afterward, and several other times during her deposition, that she did not meet Brown until she was transferred to the midnight shift. As such, it appears she may have misspoken with respect to the comments occurring on the afternoon shift. But, in any event, aside from the comment regarding the lollipop, there is no record evidence that any comments were made in front of any other person at any other time.

 I do not, as the majority insists I do, seek to eliminate foreseeability in this or similar cases. The majority remains just as confused about my opinion in this regard as it was in Anderson v Pine Knob Ski Resort, Inc, 469 Mich 20; 664 NW2d 756 (2003). See ante at 556 n 25. Moreover, before claiming a superior ability to apply principles of foreseeability, the majority might review its opinion in MacDonald v PKT, Inc, 464 Mich *580 322; 628 NW2d 33 (2001). There the majority eschewed all notions of foreseeability and refused to hold the defendant liable for the criminal acts of third parties, despite the defendant’s knowledge that the particular criminal act at issue had occurred many times before, making it likely that it would occur again. Under the majority’s reasoning in MacDonald, namely, failing to find foreseeability when it clearly existed, the majority would be forced to conclude that Brown’s act was not foreseeable, even if he had raped before.