*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHERYLE A. ROUND, as Personal Representative
of the ESTATE OF CHARLES R. ROUND,

UNPUBLISHED
September 15, 2022

Plaintiff/Counterdefendant-Appellee,

v

No. 357849
Antrim County Circuit Court

TRINIDAD RESORT & CLUB, LLC,

LC No. 20-009218-NO

Defendant/Counterplaintiff-Appellant.

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] an order denying its motion for summary disposition which asserted that it was entitled to immunity under Michigan's Ski Area Safety Act (SASA), MCL 408.321 *et seq*., because plaintiff could not demonstrate noncompliance with a statutory duty; the snow-making equipment that plaintiff's decedent collided with was not located on the ski run so a warning sign was not required. We agree and reverse.

On December 21, 2019, plaintiff's decedent, Charles R. Round, died after allegedly sustaining fatal injuries when he collided with snow-making equipment at Schuss Mountain, a ski area owned and operated by defendant. At the time, Round was participating in an event called the Tannenbaum Blitzen parade whereby volunteer skiers ski down an unlit hill—known as Kingdom Come—at night while carrying lighted torches, eventually getting to the bottom of the hill to light the ski resort's Christmas tree. Round was leading the parade of skiers—as he had for several years—when he suddenly veered to his left and skied beyond the edge of the ski run. A ski lift was located on the edge of the ski run and, underneath the ski lift, were four permanent snow-making machines installed at various points up the hill. At about the half-way point of the

---

[1] *Round v Trinidad Resort & Club, LLC*, unpublished order of the Court of Appeals, entered September 1, 2021 (Docket No. 357849).

ski hill, Round crossed into this area, collided with a snow-making machine, and sustained severe injuries that proved fatal.

On June 24, 2020, Round's wife, Cheryle A. Round, filed this negligence action, alleging that defendant failed to comply with duties imposed under the SASA, including by:

a. Failing to ensure that the snow-making equipment was properly marked or plainly visible to skiers;

b. Failing to properly light the ski area during the event;

c. Failing to mark the snow-making machine with a visible sign or other warning device to warn approaching skiers;

d. Failing to construct or maintain physical barriers to prevent skiers from colliding with the snow-making machine; and

e. Failing to install protective padding around the snow-making machine to prevent serious injuries from collisions.

In response to plaintiff's complaint, defendant asserted affirmative defenses, including that it was immune and plaintiff's claim was barred by the SASA. Defendant also filed a counterclaim alleging breach of contract, indemnification, and other claims based on the release Round had signed.

On November 2, 2020, plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(9) and (C)(10) as to defendant's defense of immunity under the SASA. Plaintiff argued that her decedent collided with a snow-making machine that was neither properly marked nor plainly visible during the nighttime event; thus, the SASA did not presume—as set forth under MCL 408.342(2)—that her decedent assumed the risk of being injured in this situation. Defendant responded to plaintiff's motion arguing, in relevant part, that plaintiff's decedent assumed the risk of skiing in the event and signed a release to that effect. But, further, defendant owed no duty to mark or make plainly visible the snow-making machine at issue because it was 10 feet tall and was not located on the ski run.

On January 4, 2021, the trial court rendered its decision and order granting plaintiff's motion for summary disposition holding, in relevant part, that "the injury causing hazard (e.g. the snow-making equipment) was neither properly marked nor plainly visible, [and thus], the Decedent cannot be said to have assumed the inherent risk of the hazard and recovery is not precluded by SASA."

Defendant filed its application for leave to appeal the trial court's order which was denied "for failure to persuade the Court of the need for immediate appellate review." See *Round v Trinidad Resort & Club, LLC*, unpublished order of the Court of Appeals, entered May 18, 2021 (Docket No. 356123).

On April 27, 2021, defendant filed a motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that defendant strictly complied with its duties mandated

-2-

by the SASA. And contrary to plaintiff's claims, defendant had no duty under the SASA to light, mark, or pad the snow-making machine at issue because it is undisputed that (1) the ski run was not open to the public when plaintiff's decedent was fatally injured, (2) the snow-making machine extended more than six feet above the snow surface; it was ten feet above the snow surface, and (3) the snow-making machine was located off of the ski run; it was nine feet away from the groomed edge of the ski run known as Kingdom Come. Moreover, plaintiff's decedent breached his duties under the SASA to "maintain reasonable control of his or her speed and course at all times." MCL 408.341(1). The video evidence showed that plaintiff's decedent abruptly departed from the ski run without effort to correct his course before striking the snow-making machine. Defendant supported its motion with numerous exhibits, including deposition testimony transcripts, affidavits, an incident report, and photographs.

Plaintiff responded to defendant's motion for summary disposition arguing, in relevant part, that the trial court already decided that plaintiff's decedent did not assume the risk in this case, and thus, defendant was not entitled to immunity under the SASA. Further, plaintiff argued, (1) the ski run was open to the public when this incident occurred, (2) the snow-making machine was less than 6 feet above the snow surface when plaintiff's expert, Stanley Gale, performed a site visit on March 6, 2021, and (3) the snow-making machine was located on the skiable portion of the trail, as Gale also determined, but, in any case, "it is the snow-making operations that must be located on the ski run—not the snow-making equipment itself." Plaintiff supported her response with exhibits, including Gale's investigative report.

Defendant replied to plaintiff's response to its motion for summary disposition, arguing that (1) the ski run was not open to the public at the time of the accident, a fact supported by the deposition testimony of witnesses, the incident report, and even the deposition testimony of plaintiff's purported expert, Stanley Gale; (2) the snow-making machine extended more than six feet above the snow surface at the time of the accident and Gale's measurement using only his ski to gauge the distance more than one year after the accident was incompetent to refute defendant's evidence; and (3) the snow-making machine was not located on the ski run, as even plaintiff's decedent's wife, son, and daughter admitted, and as testified to by other witnesses. Defendant supported its response with exhibits, including deposition testimony transcripts.

On June 1, 2021, the trial court heard oral argument on defendant's motion and the parties argued consistently with their briefs. On June 27, 2021, the trial court entered an order denying defendant's motion for summary disposition, holding that (1) whether the ski run was open to the public at the time of the accident is irrelevant but, in any case, was a question of fact for the jury considering that not just employees participated in the event; (2) whether the height of the snow-making machine at issue was six feet above the snow surface was a question of fact for the jury because plaintiff's expert found it to be less than six feet and the machine had been manipulated; and (3) whether the snow-making equipment was located on the ski run was a question of fact for the jury because plaintiff's expert stated that it was on a skiable portion of the trail. The court did not address defendant's claim that plaintiff's decedent breached his duties under MCL 408.341(1) of the SASA to "maintain reasonable control of his or her speed and course at all times." Accordingly, the court concluded that genuine issues of material fact existed that must be decided by a jury, and thus, defendant's motion was denied.

On July 16, 2021, defendant filed its application for leave to appeal arguing that preemptory reversal was required but, at minimum, leave to appeal should be granted. The snow-making equipment at issue in this case was not located on a ski run, and thus, defendant owed no duty to mark the snow-making equipment and cannot be held liable for plaintiff decedent's accident. This Court granted leave to appeal. *Round v Trinidad Resort & Club, LLC*, unpublished order of the Court of Appeals, entered September 1, 2021 (Docket No. 357849). On November 8, 2021, while this appeal was pending, plaintiff filed a motion to affirm which this Court denied. *Round v Trinidad Resort & Club, LLC*, unpublished order of the Court of Appeals, entered November 24, 2021 (Docket No. 357849).

On appeal, defendant argues that it was entitled to summary disposition because the snow-making equipment at issue was not located on a ski run; thus, defendant had no duty to place a warning sign on that equipment and defendant cannot be held liable for plaintiff's decedent's accident. We agree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). Defendant's motion for summary disposition was brought under MCR 2.116(C)(7) (immunity), (C)(8) (failure to state a claim), and (C)(10) (no material factual issue), but was supported by numerous exhibits. Although the trial court did not indicate under which subrule it denied defendant's motion, the court considered matters outside of the pleadings and so we review the motion as having been denied under MCR 2.116(C)(10). See *id.*; see also *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994).

Further, issues of statutory interpretation are reviewed de novo. *Anderson v Pine Knob Ski Resort, Inc*, 469 Mich 20, 23; 664 NW2d 756 (2003). Our purpose in reviewing questions of statutory construction is to discern and give effect to the Legislature's intent. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). Our analysis begins by examining the plain language of the statute; if the language is unambiguous, no judicial construction is required or permitted and the statute must be enforced as written, giving its words their plain and ordinary meaning. *Id.* (citation omitted).

The SASA was enacted in 1962 "in an effort to provide some immunity for ski-area operators from personal-injury suits by injured skiers." *Anderson*, 469 Mich at 23. It delineates duties applicable to ski-area operators and to skiers. As to the duties imposed on skiers, and their acceptance of the associated risks of skiing, MCL 408.342 of the SASA provides, in part:

> (2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare sports; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

This provision has been referred to as an "assumption-of-risk provision," and means that a skier has assumed the risk of being injured by these and similar dangers as inherent in the sport of skiing.

-4-

*Rusnak v Walker*, 273 Mich App 299, 301, 304; 729 NW2d 542 (2007). Thus, when a skier's injury arises from one of these dangers considered to be inherent in the sport of skiing, the ski-area operator is immune from liability unless the ski-area operator violated a specific duty imposed by the SASA that resulted in injury. *Id*. at 304-305, 313-314; see also *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731, 742-744; 613 NW2d 383 (2000).

Relevant to this case is the immunity related to snow-making equipment. Under MCL 408.342(2), ski-area operators are immune from liability for collisions with snow-making equipment, if that equipment is "properly marked or plainly visible." Plaintiff filed a motion for partial summary disposition which addressed SASA's immunity provision, MCL 408.342(2). Specifically, plaintiff argued that defendant was not entitled to immunity because plaintiff's decedent did not assume the risk of skiing into the unmarked and not plainly visible snow-making equipment at issue in this case. The trial court agreed and granted plaintiff's motion, holding that the snow-making equipment was neither properly marked nor plainly visible, and thus, plaintiff's decedent cannot be charged with assuming this risk as inherent in the sport of skiing so liability was not precluded under the SASA.

Thereafter, defendant filed the motion for summary disposition at issue here, arguing that the snow-making equipment at issue in this case actually did not have to be "properly marked or plainly visible" because it was not on the ski run; rather, plaintiff's decedent skied off of the ski run and into an area that was not meant for skiing where he collided with the snow-making equipment. In other words, defendant argued that it breached no duty imposed by the SASA with regard to the snow-making equipment, and thus, could not be held liable for plaintiff's decedent's accident.

The duty provision pertaining to snow-making equipment is codified in MCL 408.326a(b) and Mich Admin Code, R 408.80(2). These provisions address the issue that was not decided by plaintiff's motion for summary disposition, i.e., whether defendant, as the ski-area operator, had a duty to mark the snow-making equipment in this case. If SASA did not require marking this equipment with a warning sign or other device, defendant did not breach any statutory duty to plaintiff and summary disposition in favor of defendant would be appropriate.

MCL 408.326a provides in relevant part:

Each ski area operator shall, with respect to operation of a ski area, do all of the following:

* * *

(b) Mark with a visible sign or other warning device the location of any hydrant or similar fixture or equipment used in snow-making operations located on a ski run, as prescribed by rules promulgated [by the Ski Area Safety Board].

The corresponding administrative rule, Mich Admin Code, R 408.80, prescribes the conditions under which snow-making equipment must be marked, stating:

(1) When a ski run, slope, or trail is open to the public, the ski area operator shall mark snowmaking devices as stated in this rule.

(2) A ski area operator shall mark the location of any hydrant, snow gun, or similar fixture or equipment which is used in snowmaking operations located on a ski run and which extends less than 6 feet above the snow surface with a caution sign that has contrasting colors. An orange marking disc, with a minimum diameter of 8 inches, may be used as a caution sign. One sign is adequate for all devices within an area 3 feet on either side of the sign and 10 feet in the downhill direction of the ski run from the sign.

The dispositive issue here is whether the snow-making equipment at issue was "located on a ski run," as set forth in MCL 408.326a(b) and R 408.80(2).[2] We conclude that it was not. Accordingly, defendant was not in violation of the SASA, and thus, could not be held liable for plaintiff's decedent's accident.

The SASA does not define the phrase "ski run." When a statute does not define a term, it is construed in accordance with its ordinary and generally accepted meaning. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). At minimum, the plain meaning of the phrase "ski run" for purposes of the SASA must include a path or route expected to be used for skiing down a hill. Indeed, ski runs are named, designed, constructed, groomed, and designated as the route skiers are to use for skiing down a particular hill. As this Court similarly noted in *Rhoda v O'Dovero, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2016 (Docket No. 321363), unpub op at 8: "Although the SASA does not define the terms 'run,' 'slope' or 'trail,' the plain, ordinary and common meanings of these terms encompass the paths a skier or snowboarder takes to get down a hill, including those paths designed and constructed by the ski operator for precisely that purpose."[3]

In this case, no genuine issue of material fact exists—the snow-making equipment at issue was not located on the path or route expected to be used for skiing down Kingdom Come. The evidence presented by defendant in support of its argument included deposition testimony from witnesses. Plaintiff admitted during her deposition that she saw a video taken the night of the accident and she saw that her decedent actually veered the wrong way before striking the equipment—that had been in the same place for years—which was located off of the ski trail. Rick Van Tongeren, the snow sports school manager at the Shanty Creek Resort, testified that he watched a video taken the night of the incident and plaintiff's decedent was skiing out of control in the wrong direction, i.e., not on the expected path, and was skiing very fast before the accident.

Mike Moreen, the director of the ski patrol at the Shanty Creek Resort, testified that he was skiing in the parade and was at the back of the lineup when he received a radio call from Fred Hunt that ski patrol was needed "skier's left off of ski run about halfway down the hill." When Moreen arrived to help Round, he saw that Round was "in a difficult location down off of the skiing surface,

---

[2] To the extent plaintiff argues that it was the snow-making operations that must be on the ski run and not the snow-making equipment itself, we reject that argument as inconsistent with the plain language of MCL 408.326a(b) and R 408.80(2).

[3] Although not binding precedent, a court may consider unpublished opinions for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

underneath the snow gun, underneath the structure, the stanchion of the snow gun . . . ." Moreen noted that they were "in deep snow" and "were off of the skiing surface quite a ways, several feet." Round was down an embankment; about 10 to 15 feet away. And after they got Round on the toboggan to remove him from the accident site, "it probably took four or five repetitions to get him from the snow gun up to the skiing surface."

Mark Durance, a member of the ski patrol at the Shanty Creek Resort, testified that he was skiing in the parade and was the second person from the last in the lineup. When the radio call came in, Durance followed Moreen to the accident site. Round was located about "ten feet or so off the ski run so it's not a run." Durance could not really determine Round's condition "because he was so far off the existing run" that he could barely make observations. Ted Ewald, a ski instructor at Shanty Creek Resort, testified that he was skiing in the parade about 10 people from the front and he saw that "somebody went into the woods . . . ." But he did not see precisely what happened, the actual event; "I saw something in the woods when I skied by there."

The evidence presented by defendant in support of its motion for summary disposition also included an incident report. The incident report included witness statements. One witness, Michael Casey, who was the third person from the front skiing in the parade, reported that he saw that Round—who was the leader of the parade—at one point seemed to be a lot further away than he should have been, indicating increased speed. He then saw Round "go off the ski hill into the woods."

The incident report included a drawing of the snow-making machine at issue and depicted measurements taken the day after the accident. The drawing shows that the snow-making machine was located nine feet from the groomed trail; the machine sat between the groomed trail and trees, i.e., a "woods," that was located 22 feet from the groomed trail; and the machine stood ten feet tall above the snow surface. The drafter of the drawing, Tom Murton, averred in an affidavit that he drew the diagram after the accident and the precise measurements were accurate. Murton also testified in a deposition about his investigation of the accident—including the measurements taken—that occurred the day after the accident. He testified that the snow-making equipment at issue is not part of Kingdom Come's groomed ski surface or the ski run itself and had been in the same location permanently since at least the mid-1990s when he began working there. Photographs were also submitted in support of defendant's motion for summary disposition and they show the scene of the accident, including the snow-making machine at issue, and it is clear that the machine was very close to the wooded area and not on the ski run known as Kingdom Come.

In opposition to defendant's claim that it had no duty to mark the snow-making equipment at issue in this case because it was "not located on a ski run," plaintiff argued that the machine was located on a skiable portion of the trail. Plaintiff supported that argument with a report from her purported expert, Gale, which stated that the snow-making machine was located on the skiable portion of the trail. But it is unclear as to what Gale considered a "skiable portion of the trail." At issue here was the path or route expected to be used for skiing down Kingdom Come. Any area where there is snow is likely to be considered by some people as "skiable," or able to be skied on—even areas that are not expected to be skied on and areas not designed or designated for skiing. We cannot agree with the trial court that Gale's statement, alone—and which is unsupported by precise measurements or other evidence—is sufficient to establish a genuine issue of disputed fact

that warrants a trial. The party filing a motion for summary disposition has the initial burden of supporting its position with documentary evidence and the party opposing that motion must then establish by evidentiary materials that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Defendant provided a plethora of evidence establishing that plaintiff's decedent did not encounter and collide with the snow-making equipment on the path or route expected to be used for skiing down Kingdom Come. Gale's claim that the snow-making equipment was located on a "skiable portion of the trail" is not sufficient to establish that it was "located on a ski run," which would give rise to a duty for defendant to mark that equipment with a caution sign or other warning device.

And most obviously in this case, if the snow-making machine at issue was, in fact, located on the path or route expected to be used for skiing down Kingdom Come—within the contemplation of R 408.80(2), other skiers in the Tannenbaum Blitzen parade would likely have collided with—or at least seen and avoided—that equipment. There is no such evidence. The SASA imposes certain and specific duties on ski-area operators, one of which is to mark the location of snow-making equipment "located on a ski run and which extends less than 6 feet above the snow surface . . . ." Mich Admin Code, R 408.80(2); see also MCL 408.326a(b). Clearly, snow-making equipment that is located on a ski run and which extends more than 6 feet above the snow surface need not be marked. This balancing of responsibilities recognizes that skiers are charged with exercising care for their own safety by avoiding obvious hazards they might encounter skiing down a hill, and ski-area operators are charged with providing warnings when a hazard that a skier might encounter skiing down a hill is less likely to be obvious. A ski-area operator is not charged by law with the impossible task of making its ski runs or every allegedly "skiable" area at its facility "accident proof." Ski-area operators are not absolute insurers of safety, particularly with regard to those skiers who intentionally or inadvertently ski off the path or route expected to be used for skiing down a particular hill. This conclusion is consistent with the SASA's purpose of "promoting safety, reducing litigation and stabilizing the economic conditions in the ski resort industry," *Grieb v Alpine Valley Ski Area, Inc*, 155 Mich App 484, 487; 400 NW2d 653 (1986), while at the same time ensures that ski-area operators stay vigilant and responsible for providing reasonably safe skiing conditions in the areas their patrons are invited, and expected, to ski.

In this case, the trial court erred in denying defendant's motion for summary disposition because defendant had no duty under the SASA to mark the location of the snow-making equipment that plaintiff's decedent collided with, allegedly causing his fatal injuries. There is no genuine issue of fact that the snow-making equipment was not located on the ski run, i.e., the path or route expected to be used for skiing down Kingdom Come. Therefore, we reverse the trial court's decision. This matter is remanded to the trial court for entry of an order granting defendant's motion for summary disposition and dismissing this case.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates