*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK GOSS,

Plaintiff-Appellee,

v

DEPARTMENT OF NATURAL RESOURCES,

Defendant-Appellant.

UNPUBLISHED
May 06, 2025
11:45 AM

No. 364150
Court of Claims
LC No. 19-000022-MZ

---

MARK GOSS AND CHRISTY GOSS,

Plaintiffs-Appellants,

v

ESTATE OF ROY LEE PEDERSON,

Defendant-Appellee.

No. 364167
Court of Claims
LC No. 21-000076-MZ

ON REMAND

Before: RICK, P.J., and N. P. HOOD and FEENEY, JJ.

PER CURIAM.

This matter returns to this Court on remand after our Supreme Court reversed Part III(D) of this Court's ruling in *Goss v Dep't of Natural Resources*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2024 (Docket Nos. 364150 and 364167) (*Goss I*). Our Supreme Court now directs us to consider "the applicability of MCL 324.82126(8) under the facts of this case, which was raised by the DNR on appeal but was not addressed by that court during its initial review of the case." *Goss v Dep't of Natural Resources*, ___ Mich ___ (2024) (Docket Nos. 167243 and 167244) (*Goss II*); slip order at 4. Having reviewed the matter in full, we affirm.

-1-

## I. FACTUAL BACKGROUND

In *Goss I*, we provided the following pertinent factual background:

On February 26, 2018, a catastrophic collision occurred between a snowmobile operated by [Mark] Goss and a 2015 John Deere Gator 625i crossover utility vehicle (Gator) operated by [Roy Lee] Pederson, who was a DNR [Department of Natural Resources] Ranger. The result of the accident was tragic. Pederson died at the scene, and Goss was seriously injured.

The collision occurred near Sault Ste. Marie, Michigan. Goss and his friend, Joseph Eckelstafer, drove to Sault Ste. Marie from an area near Grand Rapids, Michigan, to ride their snowmobiles. On the day of the incident, Goss was riding on a trail known as Trail 8, and Pederson was grooming a cross-country ski trail known as the Algonquin Ski Trail. The Gator was pulling a grooming rake and was riding on snow tracks. Trail 8, a former railroad grade, has no posted speed limit where it intersects with the Algonquin Ski Trail. It is designed for speed and snowmobiles may travel on it going highway speeds. A private association maintains Trail 8. The Algonquin Ski Trail is a ski pathway that is about [8] miles long, and the DNR is responsible for its maintenance. Trail 8 displays a yield sign about 89 feet away from the intersection, and the Algonquin Ski Trail has a stop sign right at the intersection. The Gator traveled at a slow rate of speed (about 8 miles per hour (mph) to 12 mph) when it was on the tracks.

By all accounts, both Goss and Pederson had experience with the area where the incident occurred. Goss is an experienced snowmobile rider. He rode his snowmobile on Trail 8 regularly, but had never seen a ski-trail groomer like the Gator. Pederson also had decades of grooming experience, and he groomed the Algonquin Ski Trail a couple of times per week. His supervisor, Corey Butcher, testified that Pederson was an exemplary employee. Butcher explained that because of the foliage in the area, it was necessary for Pederson to "pull out a little ways" onto Trail 8 to determine whether there were snowmobiles entering the intersection in either direction.

The accident occurred when the two vehicles collided in the intersection and caught fire. There were no eyewitnesses. Goss has no recollection of the accident, and Eckelstafer, who had become separated from Goss because of another stop sign, did not see the accident occur. He would later testify that the men were traveling 55 mph to 60 mph, and that he was traveling about 50 yards behind Goss. Goss testified that his regular practice was to travel about 40 mph to 60 mph down Trail 8. [*Goss I*, unpub op at 2.]

Goss sued the DNR in the Court of Claims for negligence and gross negligence. *Id*. at 3. In the course of the proceedings, the DNR moved for summary disposition under MCR 2.116(C)(7) (immunity granted by law) and (C)(10) (no genuine issue of material fact). The Court of Claims denied the DNR's motion for summary disposition. Relevant to this appeal, the Court of Claims ruled that Goss did not assume the risk of the accident under MCL 324.82126(8),

a provision of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*., because the risks associated with the accident were not inherent in the activity of snowmobiling.

On appeal, the DNR again raised the argument that Goss's claim was subject to the assumption-of-the-risk provision outlined in MCL 324.82126(8). The DNR's theory was that when MCL 324.82126(8) is read in harmony with the governmental tort liability act (GTLA), the motor-vehicle exception to governmental immunity does not apply to accidents in which the plaintiff is riding a snowmobile. In a split decision, this Court reversed the order of the Court of Claims denying the DNR's motion for summary disposition and remanded for entry of an order granting the DNR summary disposition. *Goss I*, unpub op at 1-2. The majority (RICK, P.J., and JANSEN, J.) held that Goss did not meet his burden to establish a genuine issue of material fact on negligence for purposes of the motor-vehicle exception to governmental immunity. *Id*. at 6. Given this conclusion, the majority did not address the DNR's argument that summary disposition was proper because Goss assumed the risk of injury by riding a snowmobile. *Id*. at 4 n 2.

Goss applied for leave to appeal to our Supreme Court. In lieu of granting leave to appeal, our Supreme Court entered an order reversing the portion of this Court's opinion holding that the Court of Claims erred by denying the DNR's motion for summary disposition. *Goss II*, ___ Mich at ___; slip order at 1. Our Supreme Court reasoned that "the Court of Claims correctly concluded that Goss has provided sufficient evidence to establish a question of fact for trial because reasonable minds could find that, but for decedent Roy Lee Pederson's alleged negligent operation of the [Gator] while dragging a snow-grooming rake, the accident would not have occurred." *Id*. at ___; slip order at 2. The Court concluded that Goss had put forth evidence establishing his negligence claim beyond mere speculation and conjecture. *Id*. at ___; slip order at 2-4. The Court then directed as follows:

> We REMAND this case to the Court of Appeals for consideration of the applicability of MCL 324.82126(8) under the facts of this case, which was raised by the DNR on appeal but was not addressed by that court during its initial review of this case. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court. [Id. at ___; slip order at 4.]

We now address the matter on remand.

## II. ANALYSIS

The DNR argues that it was immune from Goss's negligence lawsuit because he assumed the risk of the accident by riding a snowmobile. In support of that argument, the DNR contends

that MCL 324.82126(8) of the NREPA supersedes the GTLA and that Goss assumed the risk of the accident under the statute.[1] We disagree.

This Court reviews de novo the lower court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. The motion will be granted only if no genuine issue of material fact exists. *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). "The applicability of governmental immunity and the statutory exceptions to immunity" are also reviewed de novo. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Finally, this Court reviews de novo issues regarding the proper interpretation of a statute. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024).

"The primary goal of statutory interpretation is to identify and give effect to the intent of the Legislature." *VHS of Mich, Inc v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368755); slip op at 3 (quotation marks and citation omitted). This Court will give each word or phrase its plain ordinary meaning, unless the term is defined in the statute or given a special, technical meaning. *Id*. at ___; slip op at 3. When two statutory schemes appear to conflict, this Court should endeavor to construe them in harmony with one another "so as to give meaning to each." *Meemic Ins Co v Christian Care Ministry, Inc*, 342 Mich App 8, 12; 993 NW2d 4 (2022) (quotation marks and citation omitted).

Generally, a governmental agency is immune from tort liability when it is "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). Governmental immunity is broad, and the exceptions to governmental immunity must be construed narrowly. *West v Dep't of Natural Resources*, 333 Mich App 186, 191; 963 NW2d 602 (2020). Six exceptions to governmental immunity exist, but we are only concerned with the motor vehicle exception, MCL 691.1405. The statute provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [the Michigan Vehicle Code, MCL 257.1 *et seq*.]" MCL 691.1405.[2]

The DNR argues on appeal that the statutory framework outlined in MCL 324.82126(8) of the NREPA controls this issue. MCL 324.82126 relates to prohibited snowmobile operations and outlines the inherent dangers of snowmobile usage. It provides, in relevant part:

---

[1] In the Court of Claims, the DNR relied on the common-law foreseeability test outlined in *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999), and expanded upon in *Bertin v Mann*, 502 Mich 603; 918 NW2d 707 (2018). However, on appeal, the DNR relies solely on the NREPA to support its argument that Goss assumed the risk of the accident.

[2] This Court held in a prior appeal that the Gator was a motor vehicle for purposes of MCL 691.1405. See *Goss v Dep't of Natural Resources*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2020 (Docket No. 349411).

Each person who participates in the sport of snowmobiling accepts the risks associated with that sport insofar as the dangers are obvious and inherent. Those risks include, but are not limited to, injuries to persons or property that can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; and collisions with signs, fences, or other snowmobiles or snow-grooming equipment. Those risks do not include injuries to persons or property that can result from the use of a snowmobile by another person in a careless or negligent manner likely to endanger person or property. [MCL 324.82126(8).]

The DNR additionally argues that the NREPA and the GTLA must be read in harmony, and that when they are read together, the NREPA provides broader immunity than that afforded to governmental agencies under the GTLA. The DNR reasons that this is so because Goss was injured in a collision with snow-grooming equipment while engaged in the sport of snowmobiling.[3] Under MCL 324.82126(8) of the NREPA, plaintiffs who participate in the sport of snowmobiling accept the risk of such injuries, suggesting that no liability can attach. Because Goss cannot bring a claim under MCL 324.82126(8), the DNR contends that he cannot avail himself of the motor vehicle exception to governmental immunity.

The GTLA and the NREPA have never before been harmonized, making this a matter of first impression for the Court—and a difficult task, at that, given that the two statutory schemes have little in common. The GTLA was enacted in 1964 and codified then-existing common law regarding sovereign immunity. *Ballard v Ypsilanti Twp*, 457 Mich 564, 568; 577 NW2d 890 (1998). The NREPA, on the other hand, was enacted in 1994 to provide a comprehensive environmental-regulation scheme. *Howell Twp v Rooto Corp*, 258 Mich App 470, 479; 670 NW2d 713 (2003). Although both the GTLA and the NREPA reorganized and consolidated existing legislation into one statutory scheme, there is no direct connection between the two statutes. That the NREPA was enacted after the GTLA does not support that the NREPA was intended to limit the exceptions in the GTLA, nor does it appear that there is any limiting language in either statute to suggest that the Legislature intended for the NREPA to supersede the GTLA in places where they conflict.

The purpose and subject matter of the GTLA and the NREPA also differ greatly. We cannot discern anything about the nature of the NREPA that would eliminate or alter the exceptions to governmental immunity outlined in the GTLA. And while the NREPA is certainly a longer statute than the GTLA, neither statute is inherently more specific than the other for the subject matter they govern. As our Supreme Court put it in *Milne*, "their scopes and aim[s] are distinct and unconnected." *Milne*, 513 Mich at 16 (quotation marks and citation omitted; alteration in original). "Both statutes are narrow and broad in their own ways such that determining which

---

[3] Goss contends on appeal that he was not engaged in the sport of snowmobiling, but we are not persuaded by his argument. On the day of the incident, Goss and Eckelstafer had decided to remain in the area because the riding conditions were good. Eckelstafer described the activity as "[l]eisure cross country" riding. Thus, it is evident that Goss was riding a snowmobile recreationally, as opposed to riding a snowmobile purely for travel or some other purpose.

provision is more specific turns entirely on how you define the subject matter at issue." *Id*. at 16-17. Ultimately, reading the statutes as harmoniously as reasonably possible, the scope and purpose of each statute supports that that the motor-vehicle exception in the GTLA remains intact even in accidents where the plaintiff is riding a snowmobile.

Even were we to assume that MCL 324.82126(8) does supersede or override the GTLA under the circumstances presented here, the standard of care remains one of negligence. MCL 324.82126(8) provides that the risks "do not include injuries to persons or property that can result from the use of a snowmobile by another person in a careless or negligent manner likely to endanger person or property." MCL 324.82126(8). The DNR has not provided this Court with a valid basis for distinguishing between two snowmobiles colliding and a snowmobile colliding with another type of motor vehicle, such as the Gator that Pederson was driving in this case. We therefore see no cause to presume that the Legislature intended for a higher standard of care to apply when another form of crossover utility vehicle is involved in an accident with a snowmobile.

Additionally, there is no evidence that Goss assumed the risk of the accident. The DNR relies on the language of MCL 324.82126(8) to support that the collision was obvious and inherent in the sport of snowmobiling because Goss collided with "snow-grooming equipment." The term "snow-grooming equipment" is not defined in the NREPA. See MCL 324.82101; MCL 324.82126. The record before us indicates that Pederson was towing a grooming rake behind the Gator, and that Goss collided with the Gator itself. Thus, Goss collided with another motor vehicle that was in turn dragging a piece of snow-grooming equipment. MCL 324.82126(8) identifies the inherent risks of snowmobiling as including collisions with "signs, fences, or other snowmobiles or snow-grooming equipment." The only type of motor vehicle that is listed is another snowmobile. The Legislature chose not to list other types of motor vehicles, such as automobiles or other off-road vehicles. Accordingly, the statute does not expressly identify collisions like the one that occurred here, between a snowmobile and a Gator tractor, as inherent to the sport of snowmobiling. See *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 607; 997 NW2d 755 (2022) (noting that "the expression of one thing is the exclusion of another," when those items are members of an associated group or series of items).

We thus conclude that, even if MCL 324.82126(8) provided broader immunity than the GTLA in this context, Goss did not assume the risk of colliding with the Gator. Goss was traveling on a designated snowmobile path. This made a collision with another snowmobile, signs, fences, natural objects, or even snow-grooming equipment on the trail an obvious or inherent threat. See MCL 324.82126(8). Goss testified that he had never seen a tractor serving as a ski-trail groomer on Trail 8, and the DNR has not explained why a collision with this type of vehicle would be inherent or obvious in the sport of snowmobiling. Accordingly, the risk of a collision with the Gator was not an inherent risk in the activity of snowmobiling.

The DNR nevertheless compares the NREPA provision to an assumption-of-the-risk provision found in the Ski Area Safety Act (SASA), 408.321 *et seq*. We conclude that the SASA is distinguishable and, to the extent that it is persuasive, it supports Goss's position. The relevant provision of the SASA, MCL 408.342, provides:

> (1) While in a ski area, each skier shall do all of the following:

(a) Maintain reasonable control of his or her speed and course at all times.

(b) Stay clear of snow-grooming vehicles and equipment in the ski area.

(c) Heed all posted signs and warnings.

(d) Ski only in ski areas which are marked as open for skiing on the trail board described in [MCL 408.326a].

(2) Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment. [Emphasis added.]

Like the NREPA, the SASA provides that skiers assume the risk of dangers that are inherent to the sport of skiing and are both obvious and necessary. *Anderson v Pine Knob Ski Resort, Inc*, 469 Mich 20, 24; 664 NW2d 756 (2003). The purpose of the Act is to provide some level of immunity to ski-area operators when personal injuries occur on their premises. *Id*. at 23.

The language in the SASA does not support the DNR's position regarding the NREPA. The SASA lacks any language suggesting that the assumption-of-the-risk standard does not apply to collisions involving the negligent or careless acts of a skier. Additionally, the SASA distinguishes between "snow-grooming vehicles" and "snow-grooming equipment," although the statute does not define these two terms. See MCL 408.342(1)(b) and (2); MCL 408.322. Our Supreme Court has explained that snow-grooming equipment includes "grooming machines," suggesting that equipment differs from vehicles. See *Anderson*, 469 Mich at 25-26. The NREPA does not include a collision with a snow-grooming vehicle in the list of collisions for which a snowmobiler assumes a risk. Therefore, the SASA supports our distinction between snow-grooming equipment and a Gator tractor pulling a snow-grooming rake.

In summary, when harmonizing the NREPA and the GTLA, the GTLA remains intact and the motor vehicle exception applies to injuries caused by the negligent operation of a motor vehicle by a governmental employee. Even if the NREPA were to supersede the GTLA, the collision between Goss's snowmobile and the Gator was not a risk inherent in the sport of snowmobiling.

Affirmed.

/s/ Michelle M. Rick
/s/ Noah P. Hood
/s/ Kathleen A. Feeney